Plaintiff sued to recover workman's compensation on the basis of permanent total disability resulting from an injury allegedly sustained by him while discharging the duties of a contract of hiring between himself and his son, W.T. Burks, involving the hauling and loading of pulp wood. In addition to the son, plaintiff impleaded, as defendants, Archie Brown, Johnson Brothers, a commercial co-partnership, and the Central Surety 
Insurance Company, carrier of compensation insurance for the co-partnership. In his original petition, plaintiff alleges that W.T. Burks was working for Archie Brown, a sub-contractor of Johnson Brothers; that the amount of insurance premiums was determined from the quantity of pulp wood hauled and loaded at the rate of fifteen cents per cord. Employing this alleged state of facts as a basis, he theorizes that he, W.T. Burks, and Brown were all employees of Johnson Brothers and were protected by the insurance coverage. In supplemental petition, he alleged that Brown, representing Johnson Brothers, came to his home and informed him that a car had been spotted at McIntyre, Louisiana, for pulp wood loading; and instructed him and his son to haul and load pulp wood on the car; "that it was acting on this employment and working under *Page 46 
his son who owned the truck that they proceeded to haul and load the wood."
Plaintiff further alleges that while in the act of lifting a heavy stick of wood from the ground onto a flat car at McIntyre, Louisiana, he felt a severe pain in his stomach and lower abdomen and that he immediately became violently sick; that his condition grew so much worse that he was within a short time driven to the City of Minden, a few miles distant, and there placed in charge of a physician for appropriate attention and treatment. Examination revealed that a peptic ulcer in the interior wall of the stomach had ruptured. A successful operation was performed.
It was also alleged in a supplemental petition: "* * * that the rupture was caused by the strain from the picking up of the pulp wood; and also ruptured and tore the inner lining of his stomach. * * *"
W.T. Burks did not answer. Issue as to him was not joined. The other defendants filed a joint answer. They deny specifically that plaintiff suffered an accident while working for either of them and aver that he had suffered from the ulcer for many years; that, without any heavy lifting or straining, his condition grew so much worse the morning of the alleged accident it was necessary to remove him to a sanitarium in Minden; that the ulcer ruptured not from any strain or unusual physical effort or action, but from its own unhealthy chronic condition. They also expressly deny that plaintiff was employed by W.T. Burks, but, on the contrary, aver that W.T. Burks was employed by him. However, defendants also alleged that plaintiff was employed by Archie Brown, who, it is alleged, was an "independent contractor engaged in the cutting and hauling of pulp wood", over whom his co-defendants had no control; that if plaintiff is entitled to recover compensation at all, which is denied, Brown alone is responsible therefor.
The lower court reached the conclusion that plaintiff failed to establish by a preponderance of the evidence his right to recover compensation and dismissed his suit as in case of non-suit. He appealed from that judgment.
The record is free of doubt that at the time of the trial, nine months subsequent to the alleged accident, plaintiff, as a direct result of the rupturing of the ulcer, and the operation therefor, was totally disabled to do any sort of gainful work, especially manual labor by which he had during his entire life earned a livelihood.
Several distinct issues of fact must be resolved in plaintiff's favor before any judgment can be rendered for him. In saying this, we do not overlook the legal questions arising from and which are closely identified with said fact issues. The burden rested upon plaintiff to prove by a preponderance of the testimony the following facts, to-wit:
1. That he was an employee or sub-contractor of Brown and/or Johnson Brothers;
2. That the ulcer ruptured from an unusually heavy strain or other unusual physical effort or action, while performing the duties of his employment, amounting to an accident within the meaning of the Workmen's Compensation Law, Act No. 20 of 1914.
3. The amount of his weekly wages.
The lower court was unable to hold from the testimony adduced that plaintiff had met the burden of proof under either of said propositions. To support its conclusions the court gave written reasons for judgment. The testimony and the issues are fully analyzed and discussed therein. After a diligent study of the record, we find ourselves in accord with the lower court's conclusions. We incorporate herein and adopt as our own the following portions of said reasons, to-wit:
"Brown had some wood cut and stacked near McIntyre to which point it was to be hauled and loaded on cars to be carried by rail to Springhill. Brown was paid $3.55 per cord for the wood delivered on the railroad car, less 20 cents deducted for insurance. Brown employed either plaintiff or his son, W.T. Burks, to haul the wood and load it on the car, paying $1.50 per cord for this service.
"Plaintiff and his son say the trade was with the son and that plaintiff was to receive $3.00 per day as wages. Brown says the trade was with the plaintiff, and that the son, W.T. Burks, was in Texas at the time and he did not know him in the trade. Plaintiff had owned a truck that was burned, and the one being used at the *Page 47 
time of the claimed injury had been bought by W.T. Burks, and he says he left it with his father to use, and that he was to pay him $3.00 per day. This is the extent of the evidence on the rate of pay plaintiff was to receive. Brown says he never made any trade with W.T. Burks to haul any wood, but that his trade was with plaintiff, and that he, W.T. Burks, was in Texas at the time, and Burks admitted this. Brown says he did not learn until after plaintiff claimed to have been injured that the truck belonged to W.T. Burks. All these things may not make any difference on the question of liability of Brown and the insurer, but cast doubt on the amount plaintiff was earning and render the amount uncertain.
"Plaintiff alleges that he received his injury, which was rupture of a peptic ulcer, while loading wood from the ground on to a car at McIntyre. The petition says he had been loading wood for an hour, but the evidence of himself and his witnesses fix the time at only a very few minutes. The petition also says plaintiff, his son and a negro, (R.L. Shaff), were hauling and loading the wood, but the evidence is that plaintiff, J.T. Bass, (no relation), and Shaff were the persons hauling and loading the wood. These witnesses say that the three had hauled a load of wood to McIntyre on Thursday, April 25, 1940, the day before the injury is alleged to have occurred, and as there was no car there to load it on, they unloaded it on the ground, and early Friday morning, April 26, 1940, they went for another load which they took to McIntyre where a car had in the meantime been spotted and that Bass got on the car, Shaff handing him the wood from the truck, and that plaintiff, after first going to Johnson's store for some tobacco, commenced to pick the wood from the ground where it had been unloaded the day before, and to load it on the car; that he had loaded several small sticks and then came to a large one weighing some 150 to 175 pounds which he undertook to load on the car, when he suffered severe pain in his stomach, sat down on the wood for a little while, and the wind was blowing bark from the wood on the truck into his face and he got up and moved some 30 feet and sat down on a pole, and Bass, seeing him apparently in pain, went for Herbert Johnson, who after trying to do something for him, decided he was too sick and took him to the hospital at Minden where his trouble was diagnosed as a ruptured peptic ulcer and he was operated on the same day.
"Herbert Johnson says he took him to the hospital and told Dr. McDade, (who has since died), that plaintiff thought he had appendicitis, `but I don't know what is the matter with him; the man is working on our pulp wood job; we have insurance on our job. I don't know whether he was hurt on our job or not, but I would like for you to look at him.' Johnson says that on the way to the hospital plaintiff told him that his trouble was chronic appendicitis that he had had for three years. Johnson also denies that plaintiff went into the store at all that morning.
"Practically the same account of the way plaintiff says he was injured was given by Bass and Shaff and they both say they were working for W.T. Burks for $2.50 per day.
"Opposed to their testimony as to the injury, plaintiff claims to have sustained, is that of Mrs. L.N. Johnson, wife of one of the defendants, and a negro named J.C. Bryan. Mrs. Johnson says she lives not far from the store, maybe 100 yards, and on the morning of the alleged accident, she had just finished breakfast and was standing at the kitchen sink drinking a glass of water and looking out the kitchen window just over the sink. She knew plaintiff; had seen him several times in the store where she worked a good deal of the time; that as she looked out the window she saw the pulp wood truck drive up and stop at a sweetgum tree right at some piling about halfway between the store and the railroad track. She doesn't recall how many men were on the truck, but thinks it was three, but that they got off the truck, one of them being helped off, and she looked close and saw it was plaintiff that was helped off; she thought maybe he was hurt or drunk. He was holding his stomach, and the others helped him over to one of the poles and he sat down and the others stood around him. She was interested and walked out on the back porch and watched. After a short time the truck was moved to where a car was spotted west of the road, where, she says, it was unusual to spot one. She thinks the negro drove the truck. She says she stood and watched and saw Herbert (Johnson) go out to see about the man and she then went in the house to finish dressing, and then went down there. She says plaintiff was not out of her sight *Page 48 
from the time he got off the truck until Herbert went to see about him. On cross examination she said the negro and Bass started unloading the wood from the truck onto the car, and then Bass came back to where plaintiff was sitting, but she could not hear what he said. Then Bass went after Herbert.
"Mrs. Johnson's testimony is corroborated by the negro, J.C. Bryan, who says he and two other negroes were working on a well at the rear of the store when the truck drove up and stopped and all three men got out and plaintiff sat down on the pole and the other two took the truck to the railroad, and that then he saw Mr. Herbert (Johnson) go out to where the plaintiff was sitting on the pole, and that was the first time he knew plaintiff was sick.
"As to the medical testimony, Dr. B.L. Cook, who operated on plaintiff, says he had a ruptured peptic ulcer, the rupture being about the size of two ordinary matches and the ulcer being about the size of a half dollar. The operation was what is called a `purse-string suture'. The ulcer was not removed but fixed so it would hold until a rest cure and treatment might heal it. He is of the opinion that the rupture of the ulcer was caused by the strain of lifting, or some other strain. At least, he thinks it more probable that it would rupture from some strain. He thinks plaintiff had been suffering from it for at least six months. He says it would have been possible that plaintiff would not have had any pain from it before that time, but usually there would be suffering from heartburn, cramping, etc.
"Dr. C.M. Baker says a strain such as claimed by plaintiff could cause a rupture of such an ulcer, but it could also happen with a person in bed. Dr. Baker says plaintiff is disabled now, but he is not certain whether the ulcer has healed or whether his trouble is from adhesions, and he and Dr. Cook think probably another operation may be necessary before plaintiff will recover.
"Dr. J.B. Benton's testimony was along the same line as that of Dr. Baker. He thinks that a person with such an ulcer as Dr. Cook described would suffer from it for some time prior to the rupture.
"Dr. Martin and Dr. Sentell testifying for defendants, say the strain of lifting could cause a rupture, but they do not think it probable. They say other things cause ruptures, such as when the stomach is emptying itself after digestion. They made a general examination of plaintiff, at which time he had some temperature and showed some pus in his urine. Dr. Baker also found this, but said this alone would not disable him or prevent him being passed for work.
"I am familiar with the rule of law laid down in Robichaux v. Realty Operators, Inc. [195 La. 70], 196 So. 23, to the effect that an employee disabled by an accident is not to be denied compensation because he already is suffering from some progressive disease that might in time disable him. That has long been the law, as witness the many cases cited. Also the rule is that if a person have a disease that is dormant and its development is accelerated by accident, the employee is never the less entitled to compensation if disabled.
"In the instant case, if all the evidence was clear, the fact that plaintiff had been suffering with this peptic ulcer for some time would not bar recovery, but there is so much conflict in the evidence and a good deal of variation in the pleading and the proof, that I am forced to the conclusion that plaintiff has not met the burden that is on him to make out his case by a clear preponderance of the evidence.
"For instance, the defendant Brown says he employed the plaintiff to haul the wood. Plaintiff says in his petition that Brown came to his (plaintiff's) home and told him a car was ready at McIntyre and employed him and his son to haul the wood and load it, when the evidence clearly shows that the son, W.T. Burks, was in Texas at the time. The petition alleges that plaintiff, his son and the negro, Shaff were hauling the wood, but the evidence shows it was plaintiff, Bass and Shaff that hauled it. And to all of this variance is added the testimony of Mrs. Johnson and the negro, Bryan, which to say the least, casts doubt on whether or not plaintiff had such an accident as he claims, or at least, that he suffered any strain in the way he claims.
"All in all the evidence seems to me to be so unsatisfactory as not to support a judgment for the plaintiff.
"Though not pleaded, the evidence shows that plaintiff helped load the truck with wood before it was taken to McIntyre to put it on the car, and it may be that some strain he had while working accelerated the *Page 49 
disease he had and induced the rupture. Then there is the unsatisfactory evidence as to employment by Brown. These things might be straightened out in another suit, and for these reasons, I have concluded that an involuntary non suit would be proper."
For the reasons herein assigned, the judgment appealed from is affirmed and plaintiff is cast for all costs.
DREW, J., is recused.