HARDY, Judge.
This is a compensation claim for total, permanent disability allegedly sustained by plaintiff as the result of an accident while in the performance of the duties of his employment. From a judgment in favor of plaintiff the defendant employer and its insurer have appealed.
Plaintiff’s petition alleged that on or about March 7 or 8, 1956, while performing his duties as a driller in the employ of Riggs Drilling Company, the drum clutch of the drilling rig flew out of gear, causing the clutch and brake lever to strike plaintiff violently in the area of the pubis and knocking him off the floor of the derrick against one of the concrete supporting pillars. Plaintiff claims that as the result of this accident he sustained an injury to the *219 lower part of the abdomen and to his back in the region of the coccyx, leaving a condition which has been diagnosed as traumatic arthritis of the coccyx and traumatic coc-cygodynia, which condition has totally and permanently disabled him from the performance of work of the same or a similar nature to that in which he was engaged at the time of the injury.
There can he no question as to the occurrence of the accident and, undoubtedly, plaintiff sustained a terrific blow and a violent fall. The sole and purely factual issue presented on this appeal relates to the causal relationship between the accident and plaintiff’s subsequent disability.
The record before us contains the testimony, or the reports admitted in evidence, by agreement, in lieu of testimony, of nine medical experts who made examinations of plaintiff and, in some instances, administered treatment during the period of time following the accident in March, 1956, and trial of this suit in October, 1957. In addition, substantial testimony by a number of lay witnesses bearing upon plaintiff’s disability to perform manual labor was introduced on trial in behalf of plaintiff.
At the outset it is pertinent to note that, following the occurrence of the accident, plaintiff continued his work as a driller in the employ of the defendant, Riggs Drilling ■Company, until completion of the operation •at the site of the accident, and, thereafter, plaintiff worked as a driller for another drilling company until sometime in December, 1956, since which date it is contended he has been totally disabled. This suit was filed on February 28, 1957, only slightly less than one year following the accident.
A chronological account of plaintiff’s physical examinations and treatments is as follows:
1.On May 18, 1956, plaintiff was examined and admitted to treatment for hemato-spermia by Dr. E. C. St. Martin, of Shreveport, a specialist in urology; was re-examined on or about May 21st and again on June 20th, and, during this period, was under treatment by Dr. St. Martin.
2. On June 22, 1956, plaintiff was examined and treatment was begun by Dr. R. K. Womack, of Shreveport, a specialist in urology, the complaint being a recurrent urethral discharge, accompanied by back and leg ache, and' plaintiff was treated by this doctor on about 20 occasions up to the date of December 13, 1956.
3. On August 28, 1956, by referral from Dr. Womack, plaintiff was examined by Dr. Gene D. Caldwell, of Shreveport, a specialist in orthopedic surgery, on a complaint of pain in the sacrum and coccyx.
4. On December 27, 1956, plaintiff was admitted to the L’Herrison Clinic & Hospital in Coushatta on a complaint of pain in the region of the coccyx and the low abdomen, where he was hospitalized for five days, later returning for a day or two for treatment. Thereafter, treatment by this doctor seems to have continued intermittently until sometime in April, 1957.
5. On January 7, 1957, plaintiff was examined by Dr. Ford J. Macpherson, of Shreveport, a specialist in orthopedic surgery, at the request of his counsel.
' 6. On March 11, 1957, plaintiff was examined by Dr. C. H. Hatchette, of Lake Charles, a specialist in orthopedic surgery, at the request of his counsel.
7. At some time prior to June 29, 1957, plaintiff was examined by Dr. W. M. Causey of Columbia, at the request of plaintiff’s counsel.
8. On June 19, 1957, plaintiff was examined by Dr. T. L. Young, of Shreveport, a specialist in neurology and psychiatry, at the request of plaintiff’s counsel.
9. On July 3, 1957, plaintiff was examined by Dr. A. Scott Hamilton of Monroe, a specialist in orthopedic surgery, at the request of plaintiff’s counsel.
In addition to the above incidents plaintiff appears to have been examined at some *220 time during the first three or four months of 1957 by doctors at the Veterans’ Administration Center in Shreveport, following which examination he was refused admission to this facility, but the record does not contain any testimony by these unidentified medical experts, nor does it contain the testimony of Dr. Richard L. Langford, who seems to have been responsible for referring plaintiff to Dr. St. Martin for examination and treatment.
We think it is important to observe that plaintiff’s first medical consultations were undertaken of his own volition and both the complaints and the treatment solicited and administered on these occasions related exclusively to genito-urinary disturbances. It appears that the first diagnosis of coccy-godynia was made by Dr. L’Herrison in late December, 1956, more than nine months after the occurrence of the accident, although Dr. Caldwell’s opinion, as the result of his examination in September, 1956, was that plaintiff appeared to be suffering “subjectively” from coccygodynia. Dr. Hamilton, upon the basis of his examination in July, 1957, reached the conclusion that plaintiff was suffering from coccygodynia. No diagnosis of coccygodynia was made by Drs. Macpherson or Hatchette, who were the only other orthopedic specialists to make an examination of plaintiff.
Before proceeding to a summarization of the findings of the medical experts it is pertinent to call attention to some of the factual circumstances reflected in the several medical histories related by plaintiff to his various attending or examining physicians.
According to the testimony of Dr. St. Martin plaintiff was referred to him by Dr. Richard Langford- — -“for investigation of the complaint of hematospermia, which had been noticed on two occasions.” — ; plaintiff gave a history of an injury in January, 1956, while working on an oil rig, but the witness acknowledged that because of plaintiff’s illness and nervousness at the time the date could have been inaccurate and, further, the witness testified that plaintiff’s primary concern was not related to the accident. The following question by plaintiff’s counsel on cross-examination and the witness’ answer indicates that the accident was incidental to the purpose for which plaintiff was seeking treatment:
“Q. He wasn’t trying to make an accident case out of this at that time, was he? A. No.”
Dr. St. Martin testified that plaintiff related a history of Neisserian infection (gonorrhea) in 1944.
Dr. Womack testified that plaintiff made no mention of any accident or injury until October 15th, at which time he related a history of an accidental injury; that plaintiff also gave a history of gonorrheal infection which occurred in 1947. This witness further testified that on June 22nd plaintiff informed him he had been experiencing back and leg pains for a period of about six months; that he had been suffering from urethral discharge for a period of about six days and that each time he experienced a recurrence of this discharge his backaches became worse.
Neither of the above named witnesses expressed any opinion that would indicate a causal relationship between plaintiff’s accidental injury and the condition for which they had been consulted. It was brought out in the examination of Dr. St. Martin that he had written plaintiff’s counsel on January 10, 1957, making the statement:
“I cannot agree with the patient that the condition for which I treated him was the result of his injury.”
It is also pertinent to observe that plaintiff’s history of back and leg pain appears, by his own statements, to have antedated the occurrence of the accident and to have been related to his urethral disturbances and the periods of recurrent infection.
Dr. Caldwell testified as follows:
“This patient came in complaining of pain in the sacrum and coccyx. He stated that this has been present since 1955, *221 following a hemorrhoidectomy. He described the pain as being constantly present, aching through the hips with some aching down both thighs. This is constantly present and is not apparently influenced, by any activity nor is it influenced by rest. It is somewhat worse in a sitting down position.” (Emphasis by the court.)
It is impossible either to disregard the numerous inconsistencies in plaintiff’s conduct and statements of which the above constitute some examples, or to dismiss them as being irrelevant or unimportant. On the contrary, these inconsistencies are of considerable importance and influence in contributing to a proper resolution of the factual issue which is tendered by this appeal.
In the consideration of the alleged causal relationship between plaintiff’s accident and his disability, we think it important to set forth the conclusions reached by these medical experts, which we summarize as follows :
Both Drs. St. Martin and Womack, the urological specialists, found plaintiff’s complaints to be entirely compatible with the conditions of urethral disturbance and infection, from which he was found to be suffering, and did not relate his condition to any traumatic injury.
Dr. Caldwell, the orthopedic specialist, to whom plaintiff was referred by Dr. Wo-mack, found x-rays of the sacrum and coccyx to be negative for indications of bone or joint pathology and was unable to account for plaintiff’s subjective complaints on any orthopedic basis.
Dr. Macpherson, an orthopedic specialist to whom plaintiff was referred by his counsel, was of the opinion that the slight tenderness found in the region of the coccyx, on application of direct pressure and in response to actual movement, was causing plaintiff “very little difficulty” and was of the further opinion that “his greatest difficulty lies in the genitourinary tract.”
Dr. Hatchette, the orthopedic specialist to whom plaintiff was referred by his counsel, found no evidence of injury to the low back region on clinical or x-ray examination.
Dr. Caldwell recommended, in which recommendation Dr. Hatchette concurred, that plaintiff be given therapeutic treatment in the form of a tightly fitted lumbosacral brace, which recommendation was made only in deference to plaintiff’s subjective complaints of pain.
The principal support for plaintiff’s contention of a causal relationship between accident and disability is found in the testimony of Dr. L’Herrison of Coushatta, a general practitioner, and Dr. Hamilton of Monroe, a specialist in orthopedic surgery, whose examinations and observations of plaintiff have been above noted. According to the testimony of Dr. L’Herrison, who first saw plaintiff on December 27, 1956, more than nine months after the accident, plaintiff stated that he had been having pain “ever since the accident,” and “that it had been going on over a period of a month or longer, perhaps.” The witness further testified :
“He was hospitalized about a week, and at that time he was taken to Shreveport by some sheriff’s deputies who came after him for some trouble he had had. That was on December 31, 1956. He returned here for an additional day or two for hospitalization, at which time it was decided that hospitalization would do no good, or no longer be of value, that his improvement would be only a matter of time.”
Dr. L’Herrison diagnosed and treated plaintiff for coccygodynia. In April, 1957 he advised the plaintiff to go back to work and plaintiff returned to him within about thirty days and stated that he was still having pain and was unable to work. Careful examination of the testimony of Dr. L’Her-rison fails to disclose any expression of this witness which could be construed as indicating his belief that the plaintiff was *222 disabled. The witness commented upon plaintiff’s “excessive emotional problems,” and expressed the belief that these worries may have contributed to his illness.
On the basis of his examination of July 3, 1957, Dr. Hamilton made a diagnosis of —“Coccygodynia, moderately severe, probably traumatic in origin,” — and recommended an operation — coccygectomy. Dr. Hamilton did not express the opinion that plaintiff was totally disabled to perform manual labor. It is further noteworthy that this witness conceded that coccygodynia- — -“is definitely associated often times with an upset nervous system.”
It is apropos to this discussion with respect to plaintiff’s alleged disability to point out the fact that according to the great weight of opinion as expressed by the medical experts, coccygodynia is an infection which is ordinarily of brief duration, and recovery is regarded as a matter of a few weeks or months. Of course, it is obvious that this opinion would not apply to cases which involved injuries to the bone structure. That any injury sustained by this plaintiff in the area of the coccyx was not disabling is evidenced by the very fact that plaintiff continued to work for some nine months following the accident. It is true that plaintiff contends that his labor was accompanied by severe pain. However, in •our opinion, it has not been established by a preponderance of evidence that plaintiff’s professed inability to continue work was related to, nor that his pain resulted from, the .accident.
The brief analyses which we have made above with reference to the diagnoses and •conclusions of the witnesses named is more than sufficient to sustain the conclusion that plaintiff has failed to establish total permanent disability by a preponderance of the evidence. But there are additional factors which were developed by the examinations of the two medical experts whose reports we have not yet discussed. The report of Dr. Causey of Columbia, which was filed in evidence, is very brief, and consisted of the following observation:
“Our examination of the above patient was very cursory since there was no private place for examination, but it is our opinion that he has had aggravation of underlying basic emotions and psychiatric disturbances. It would be my opinion that he have neuropsychi-atric as well as orthpedic (sic) consultation.”
It is obvious that the above report is entitled to little, if any, consideration and it would be ignored except for the fact that it contains the suggestion of a condition which was indicated, directly or indirectly, in the testimony of other witnesses — that plaintiff’s condition was related to emotional or nervous disturbances.
It appears that, subsequent to Dr. Cau-sey’s examination, plaintiff was examined June 19, 1957, by. Dr. T. L. Young of Shreveport, a neurosurgical and psychiatric specialist. Dr. Young’s somewhat detailed report was filed in evidence on trial and it concludes with the following opinion and recommendations:
“Opinion: In view of the absence of objective neurological abnormalities and the non-psychotic mental status at this time, we would consider that the complaints voiced by the patient are most likely explained on an emotional basis. The fact that he was able to work for approximately six months after the accident suggests that factors other than physical trauma may have been responsible for his disability.
“Recommendations: As to the management of his present condition, it is our feeling that direct reassurance as to the physical status, with encouragement in the direction of rapid return to his work responsibility offers the best chance of improvement for this man.”
This case involves a factual question which is susceptible of resolution upon the basis of the medical evidence adduced. For this reason we have found it unnecessary to comment upon the testimony of lay wit *223 nesses. It has been repeatedly held that lay testimony should be resorted to as the determining factor only in those cases in which the medical testimony is in irreconcilable conflict. Fourchea v. Maloney Trucking & Storage, Inc., La.App., 88 So.2d 82; McElroy v. Kennedy, La.App., 84 So.2d 256. We do not find such an irreconcilable conflict to be present in the instant case, for we are convinced that the medical testimony definitely and substantially preponderates against the contentions of plaintiff.
After careful examination and thorough study of the record in this case we have reached the conclusion that plaintiff has failed to establish a causal relationship between the accident of March 7 or 8, 1956, and his claimed disability, and, conversely, the evidence substantially preponderates in favor of defendant’s contention that no such causal relationship exists.
It follows that the judgment appealed from should be, and, accordingly, it is hereby annulled and set aside and judgment is now rendered in favor of defendants rejecting plaintiff’s demands at his cost.