LOTTINGER, Judge.
This is a workmen’s compensation case wherein the plaintiff claims to be totally and permanently disabled as the result of an injury to his back received on June 12, 1961. The Trial Judge dismissed the suit and the plaintiff has appealed.
Dr. W. Shewen Slaughter, surgeon specialist in traumatic surgery, called on behalf of the plaintiff, testified as follows:
“A. Well, Isiah Williams was sent over to my office by his employer and a patient of mine of many years, Mr. Bud Hall. Isiah came in and said that he had, he was picking up a metal cabinet and hurt his back, and it was hurting him in his lower back. I examined him and prescribed two medications, Butazolidin b. i. d. tablets and Norflex Tablets, one b. i. d. This medication was given for a diagnosis of low back pain. This diagnosis was made principally on the patient’s history and not on any positive objective signs of injury to the patient’s back at that time, with the exception that it was noted that the patient had an approximate shortening of the right leg of about a half an inch.
About a half an inch, Doctor? O
Yes, sir. >
I believe you said in your report that there was a curvature of the lower spine. Did you find that to be, Doctor? iO
Well, that is a compensatory phenomenon whenever — usually when one’s leg is shorter than the other, and that was present also.
A pelvic tilt? cO
Yes, sir. >
That is a pelvic tilt you had reference to ? ©
Yes, sir. >
Doctor, could that have been caused by this trauma ? O
No, sir. <1
That was more or less a thing of fixed duration? a
It had been present for some number of years, probably as a congenital thing. Not anybody’s legs are exactly the same length. Some of us have one that’s a little longer than the other and, in order to compensate for that shortage of one leg, why, we have a pelvic tilt, naturally, and some curvature of the spine. >
Doctor, did you see him after that, or was that the only time you saw him? a
Yes, sir. Isiah came in on June 15, 1961, and he was still complaining of pain, and that day he was sent for an x-ray examination by Drs. Robert and Geheber. He was given a prescription for some Ascriptin tablets, that is a buffered *351 aspirin preparation, and he was to take two of those four times a day. He came back again the next day to learn the results of his x-rays and to check him. He was again in on the 20th of June, the 23rd of June, and the 27th of June. On each of these visits, he was complaining of his back hurting him, but on the 27th of June, I examined him and had him go through various exercises, bending forward, backward, side,, and so forth. There was no evidence of any tension in the muscles of his back or any other objective evidence of the injury, other than what I have previously described, and at that time, it was my opinion that Isiah could go back to work.
“Q. That was June 27?
“A. Yes, sir, that was the last time I saw him.”
The only other doctor who testified was Dr. Richard Branham Means, Jr., specialist in orthopedic surgery, who was summoned by both sides and who testified as follows:
“A. I have a spare, yes, sir. I examined this man on 8-23-61. He told me that, on 6-12-61, while at work, he was attempting to move a heavy filing cabinet, when he felt a sudden sharp pain in the lower back and was unable to straighten up. He reported that, since that time, he’s had — he had had a constant pain in the back. He was seen by a doctor who prescribed treatment and he improved somewhat. However, at the time I saw him, he indicated that he was still experiencing severe back pain to the extent that he was unable to work. He said that his symptoms were limited to his back, with the exception that he did have some paresthesia of both thighs. That is a tingling, or 'pins and needles’ feeling. He reported nothing else in the way or neurological symptoms,, no paralysis or weakness or loss of sensation. He stated that he had never, in the past, experienced any previous injury, or any such injury or complaint, previously. Examination was, I considered, negative. He was a healthy appearing, well muscled man of a stated age of 42. He stood with his back flexed, in a stooped position, and during most of the interview and the examination, he held his left hand against his lower lumbar region. However, he also displayed a limp when he moved about under direct observation. However, when he was disrobing and moving about on the examination table, he displayed normal back motions, and when requested to do so, under direct observation, he displayed a full range of motion in the back in all planes, but complained that the motion caused his back to hurt worse. Neurological examination was negative; reflexes were normal; there was no atrophy of the thighs or calves. X-ray examination was obtained at the offices of Robert and Gehe-ber and these films showed no evidence of old or recent trauma, aside from some slight degeneration, degenerative osteoarthrosis, such as you expect to find in a man of his age. In summary, I could find no objective findings to explain the patient’s complaints, nor to indicate any disability, as of the time of my examination, approximately two months following his reported injury.
“Q. Well, Doctor, did you make any subjective findings?
“A. Well, as I, indicated, he stood in a stooped position and supported his *352 back with his hand,, and when he moved about, he limped. With motion, when I requested him to perform various motions, he indicated that it caused him pain.
“Q. Did you give a diagnosis of his condition, Doctor?
'“A. Well, no, sir, my comment was that I could find nothing objective wrong with him — no objective findings, if there was anything wrong with him.
'“Q. Doctor, that tingling of the thighs, what would that indicate to you ?
’“A. Nothing in particular. Paresthe-sia suggests the possibility of some damage to the nerves. However,, the distribution he indicated was not characteristic; hence, I didn’t think it was of any importance or significance.
sfc sfc sfc
“Q. Dr. Means, I believe your comment in the last part of your report was to the effect that there were no objective findings to explain the patient’s complaints, nor to indicate any disability, is that correct ?
■“A. That’s correct.
“Q. And that was your medical opinion as of the date you wrote this report, September 1, 1961 ?.
“A. Yes, sir,
“Q. Have you seen this person at all since that time ?
■“A. I have no record of having seen him, except on the one occasion.
“Q. Now, I notice in your report you say that he moves about with an exaggerated limp, quite slowly?
"A. Yes, sir.
Did you feel at the time you examined him that he was exaggerating the limp ? Q.
“A. Yes, sir.
“Q. Was it quite noticable that he was doing this?
“A. Yes, Sir, I thought that he was attempting to indicate that his condition was worse than it actually was. When he was under direct observation, when it was obvious that I was examining his back, then he moved very slowly and complained of pain. When . he was distracted, when he didn’t realize that I was observing his back, well, then, his motions were free and he didn’t indicate any pain.
"Q. Now, did you know that he had been treated by Dr. W. Shewen Slaughter?
“A. Yes, sir, it was indicated that he had seen Dr. Slaughter.
“Q. Now, how did Isiah Williams get to see you? Did he come to see you, or * * *
“A. tie was referred to me by Mr. Dickinson, for evaluation.
“Q. And you directed this report to Mr. Joel B. Dickinson, Attorney at Law, on September 1, 1961?
“A. Yes, sir.
“Q. And it’s your medical opinion that you have nothing, medically, to explain any complaints or to indicate any disability in this person ?
“A. Nothing objective, no, sir.
“Q. Can you, as a matter of medical opinion, state that he’s disabled, as of the date you wrote this report?
“A. No, sir, it was my opinion that he was not disabled.”
*353 From the above and foregoing testimony the. record makes it perfectly clear that the plaintiff has failed to sustain the burden of proof imposed by law upon him.
The medical testimony is in. accord to the effect that he is not disabled and, there ■being no conflict in the medical testimony, there is no resort to the testimony of lay witnesses with respect to the question of disability. Bowden v. Riggs Drilling Company, La.App., 104 So.2d 218.
There is no error in the judgment appealed from and the same is accordingly affirmed.
Judgment affirmed.