ELLIS, Judge.
Morris Brown, plaintiff-appellee, filed th'is suit for total and permanent disability under the Louisiana Workmen’s Compensation Act against M. A. Pope, and Crown Zellerbach Corporation, for injuries allegedly suffered as the result of an automobile accident on February 7, 1957, between six and six twenty A.M. in the Parish of Livingston, La., on U. S. Highway 190, while Brown was riding on a tractor being towed to the woods to be used in hauling pulp wood by ' his immediate employer, James Carpenter, and contractor for the defendants, M. A. Pope and Crown Zeller-bach Corporation et al. The defendants, M. A. Pope and Crown Zellerbach Corporation, called as third party defendants C. R. England and Son and their public liability insurer, the Travelers Indemnity Company. The third party plaintiffs alleged in their petition that the sole and proximate cause of the accident and resulting injuries, if any, to Morris Brown were caused by the negligence of Lowell Shaw, driver of the C. R. England truck, which struck the tractor on which Morris Brown was riding from the rear.
Counsel for the third party defendant filed an exception of no right of action and of no cause of action and with full reservation under the exceptions, an answer to the third party plaintiff’s petition which consisted of a denial of the material allegations thereof as to the negligence on the part of the driver of the England truck and further answering, alleged that the accident was due solely and completely to the joint negligence, recklessness and carelessness of the plaintiff, Morris Brown, and Shelby Taylor, operator of the truck which was towing the tractor being driven by the said Morris Brown, and particularized the acts of negligence on the part of Shelby Taylor as follows:
(a) At the time and place of the accident Shelby Taylor was negligent in operating a 1955 Ford truck without signal lights, and particularly rear tail lights as required by the laws of the State of Louisiana, all of which was and is an immediate and proximate cause of the said accident.
(b) At the time and place of the accident Shelby Taylor was operating a 1955 Ford truck towing a Case tractor, which tractor was not equipped with rear tail lights as required by the laws of the State of Louisiana, all of which was and is an immediate and proximate cause of the said accident.
(c) At the time and place of the accident Shelby Taylor was negligent in operating a 1955 Ford truck with a ■Case tractor in tow, when he knew that the lights of the said vehicle were not burning and when he knew that under the prevailing visibility conditions said vehicle-constituted a hazard to vehicles approaching from the rear, all of which was and is an immediate and proximate cause of said accident.
(d) At the time and place of the accident Shelby Taylor was negligent in failing to take appropriate measures to warn oncoming traffic of the hazard created by the vehicle which he was' operating, or of which he had control, when he knew or should have known that operation of the said vehicle, under prevailing visibility, weather and traffic conditions created a hazard, all *153 of which was and is an immediate and proximate cause of the said accident.
The acts of negligence of Morris Brown are alleged to be particularly, but not exclusively, the following:
(a) At the time and place of the accident Morris Brown was negligent in operating a tractor during the night time without adequate signal lights, and particularly rear tail lights as required by the laws of the State of Louisiana, all of which was and is an immediate and proximate cause of the said accident.
(b) At the time and place of the accident Morris Brown was negligent in operating a tractor without lights, particularly considering the height of the tractor from the ground and its color, all of which was and is an immediate and proximate cause of the said accident.
(c) At the time and place of the accident Morris Brown was negligent in failing to take appropriate measures to warn oncoming traffic of the hazard created by the tractor which he was operating when he knew or should have known, because of the prevailing weather, visibility, and traffic conditions, of the hazard created by his vehicle, on the highway without signal lights, all of which was and is an immediate and proximate cause of the said accident.
(d) At the time and place of the accident Morris Brown was guilty of stopping his tractor on a heavily traveled highway, or moving at such a slow rate of speed that the said tractor constituted an obstruction to traffic properly using said highway and proceeding at normal and lawful speeds, all of which was and is an immediate and proximate cause of the said accident.
In the alternative the third party defendants plead contributory negligence against the plaintiff Morris Brown and Shelby Taylor, driver of the pulpwood truck which was towing the tractor, and that such contributory negligence on their part was imputable to the third party plaintiff, and barred the latter’s right to recovery against the third party defendant.
Counsel for plaintiff, Morris Brown, based his right to recover total and permanent disability upon the allegation that “so great and severe had been the damage to his brain, head and eye that he is not only actually physically disabled to do work of any reasonable character, but would further show and in the alternative that he is suffering from post traumatic neurosis to such an extent and degree as to render him unfit and unable physically and mentally to continue his occupation of driving trucks, tractors and cutting wood, which is the only type of work that he has been trained or is suitable for and that he has been engaged in for the past nine to ten years, showing that he has been employed by defendant since about 1949.” The third party defendants’ exception of no cause and no right of action was overruled before trial. The case was duly tried and judgment rendered in favor of the plaintiff, based upon written reasons, in favor of the plaintiff Morris Brown and against the defendant, Crown Zellerbach and M. A. Pope, in solido, for workmen’s compensation at the rate of $23.40 weekly for a period not to exceed 400 weeks, less and subject to a credit of $32.76 previously paid.
In addition, judgment was rendered in favor of the defendants, also third party plaintiffs, Crown Zellerbach and M. A. Pope, and against the third party defendants, C. R. England and Son and the Travelers Indemnity Company, “in like amount, to-wit: For the sum of $23.40 per week for a period not to exceed 400 weeks and for all costs.”
It was further ordered, adjudged and decreed that there be judgment fixing the expert medical witness fees at $50.00 each and that the same be taxed as costs.
From the judgments rendered, the defendant-third party plaintiffs, Crown Zel- *154 lerbach Corporation and M. A. Pope, have appealed and the third party defendants, R. C. England and Sons, and Travelers Indemnity Company, have also appealed from the judgment rendered against them.
Counsel for plaintiff Morris Brown has answered the appeal praying that the weekly compensation be raised to $35.00 per week for a period not to exceed 400 weeks instead of the sum of $23.40 awarded by the lower court, basing such a request upon the contention that the base of pay for plaintiff should have been upon a minimum of $54.00 per week for six days a week of nine hours per day, which would be $35.00 per week without computing overtime. Counsel also in his answer to the appeal requests that the judgment of the lower court be amended by increasing the expert medical fee of Dr. H. Tharp Posey to the sum of $150.00 as requested by him in his testimony and deposition.
On February 7th, 1957 a truck belonging to James Carpenter and used by him in the hauling of pulp wood was being driven in a westerly direction on U. S. Highway 190 in the Parish of Livingston, Louisiana, by his employee Shelby Taylor, who had riding with him in the cab a fellow employee, Sim Armstrong. This truck had a flat wooden floor on the rear frame with two upright poles at each rear corner. Being towed behind this truck was a Case tractor whose rear wheels were practically four feet in diameter. The plaintiff, Morris Brown, was occupying the seat of the tractor while it was being towed. There is evidence in one place in the record that the front wheels of the tractor had been placed upon the flat wooden bed of the truck and in another place there was testimony that all four wheels were on the pavement. However, there is no doubt that it was being towed in one position or the other and that the plaintiff was riding on the seat of this tractor. At approximately six fifteen A.M. when the pulp wood truck was being driven at approximately 15 to 20 miles per hour the left rear wheel of the tractor, which was being towed, and upon which plaintiff was riding, was struck by the right front side of the bumper on the England truck, knocking the tractor wheel off and across the highway to the left and south. In some manner the England truck also struck the left front door of the pulpwood truck. The collision blew out the right front tire on the England truck. As a result of the collision, Morris Brown was thrown from the seat of the tractor and rendered unconscious. He was taken to Hammond, Louisiana, to Dr. Ay-cock, who was employed by the defendants as their regular physician. Dr. Aycock described plaintiff’s injuries as a mild concussion, laceration of his right eye brow which required suturing, laceration of the left palm, partial avulsion of the skin of his palm and contusions of his face and of the left lower chest and the loss of a tooth, and also a hemotoma of the knee. Dr. Aycock attended to his wounds and repaired the lacerations and treated the contusions. He discharged the plaintiff on February 14, and told him to return to his work. Plaintiff returned to work for some five weeks but the testimony shows that he did not satisfactorily perform his duties. Plaintiff claimed that he was unable to do the work and his fellow employees corroborate him in this statement. He therefore was sent back to Dr. Aycock on March 2nd for re-evaluation. Dr. Aycock on this visit could find nothing organically wrong with the plaintiff to justify his many complaints of pain in his left leg, headaches, backaches, nor any residual disability in the sight of his right eye. It is definitely shown that plaintiff’s left eye had been injured some years before which resulted in the loss of sight in that eye. Plaintiff contended, however, that he could see a little out of the eye prior to the accident but not afterwards and he also contended that the sight in his right eye had been affected by the accident.
It is practically admitted that plaintiff does not suffer any disability as a result of the injuries which he suffered in the accident, and plaintiff’s case is based entirely upon traumatic neurosis directly attributed to the injuries plaintiff received in the acci *155 dent. It is upon this ground that plaintiff’s case must stand or fall.
Testifying on behalf of the plaintiff was Dr. H. Tharp Posey, Psychiatrist of New Orleans, La. Dr. Posey examined plaintiff on the 12th of December, 1957, approximately ten months after his accident which consisted of a psychiatric evaluation, neurological examination and electroencephalogram, which, “is to the brain what, say, an electrocardiogram or EKG is to the heart. It is a record of the electric activity of the brain.” The examination took an hour and the electroencephalogram took an hour, or a total of two hours.
Dr. Posey was of the following opinion:
“After performing my examination of Brown, and taking his history, my conclusion was stated in my report to you as follows: My diagnostic opinion is that Brown is suffering from a conversion reaction, formerly termed a hysterical reaction, as a result of his accident. In view of the moderately severe brain concussion which he suffered, the neurotic complications referable to the head and cranial nerves possibly and very likely have an organic substrate in the post-traumatic encephalopathy.
“I see no evidence of analogous substrate in complaints relative to the back and right lower extremity. Nevertheless, he has the neurotic disability in this area, whether or not there is an organic substrate. In my opinion, the man is perfectly sincere in his complaints although, consciously and unconsciously he probably is exaggerating them to some degree in view of litigation.
“I do not think, however, that the usual range of award in a case of this kind is going to help his symptoma-tology significantly. I would further express the opinion that he is totally and permanently disabled.
“Q. Dr. Posey, will you define what neurotic substrate is?
“A. Neurotic Substrate?
“Q. Or organic substrate? You have used ‘analogous substrate’ and ‘organic substrate’.
“A. That there is some organic disorder actually present beneath the total neurotic picture.
“Q. Doctor Posey, will you state what or define what your profession terms a post traumatic neurosis ?
“A. Well, a post traumatic neurosis is simply a psychoneurotic reaction to trauma and traumatic incidents. That psychoneurotic reaction can take the form of any one of the typical psychoneuroses, anxiety reaction, conversion reaction, obsessive compulsive reaction, a depressive reaction, but the precipitating etiologic factor I should say is the traumatic event.”
It was Dr. Posey’s opinion that the injury which Morris Brown had suffered as the result of the accident on January 7th, 1957 was. the cause of his disabling condition which he described as a post traumatic neurosis or a psycho-neurotic reaction to trauma and traumatic injury.
Dr. Posey also testified that it was not possible for schizophrenia to be caused by trauma but that an acute episode of the disease could be brought on by one or more traumatic events. On cross examination, Dr. Posey frankly admitted that he could find nothing organically wrong with the plaintiff which would in any manner justify his complaints other than traumatic or conversion neurosis which in his opinion totally disabled the plaintiff.
The defendants offered the testimony of Dr. George K. Caruso, a psychiatrist practicing in the City of Baton Rouge, Louisiana. Dr. Caruso was of the opinion that on the basis of the symptoms expressed by the plaintiff he was not neurotic, but was instead suffering from a schizophrenic reaction which he believed plaintiff to have been suffering from all his life, and not only since *156 the time of the injury. He stated that a schizophrenic disablement would not necessarily prevent a person from doing; hard work. Based upon the assumption that plaintiff had done hard manual labor for several weeks or a month at a time since his injury Dr. Caruso stated that obviously it did not incapacitate him. As a matter of fact, however, the record shows conclusively that plaintiff did not do any hard manual labor for several weeks or a month subsequent to his injury. It does show that he attempted to work but performed his duties most unsatisfactorily according to testimony of his employers. He told Dr. Caruso that he was not able to work because of “severe anxiety”. Dr. Caruso was of the impression that plaintiff had greatly exaggerated the severity of his anxiety but testified that although he might be willing and able to ride in a motor vehicle, that it would not be necessarily true that from a standpoint of fearfulness he would be willing to drive the motor vehicle. Dr. Caruso testified on cross examination that he did not think plaintiff was malingering because he “felt that his (plaintiff’s) symptoms sounded too good to have been invented by him * * * ” and that “It would have been hard for him to make up symptoms as he reported to me.” Dr. Caruso also stated that plaintiff was cooperative and told him of his symptoms, being his foggy vision, his headaches, his backache, his leg aches, his loss of sexual desires, his fears, his anxieties, and whether it was due to a psychosis or neurosis, either could prevent plaintiff from working. This doctor also stated in his report and in his testimony that he did not believe that schizophrenia could be caused by a single traumatic event, but the overt manifestations of such an illness could be precipitated by trauma such “as the informant suffered.” He also stated that the overt manifestations of schizophrenia could be precipitated by a trauma which might well destroy the defenses against the manifestation of such a disease.
A summation of Dr. Caruso’s testimony is simply that plaintiff had schizophrenia prior to the accident and that the only connection between the accident and his symptomatol-ogy at the time he examined him would be that the traumatic experience suffered by him in the accident broke down his defenses against his schizophrenia so that his present symptoms then began to assert themselves and that if he was disabled it was. from a breakdown of his defenses against his schizophrenia and not a post traumatic neurosis.
Dr. Paul L. Marks, ophthalmologist, practicing in Baton Rouge, testified on behalf of the defendants. He found the plaintiff to be blind in the left eye and with a normal 20-20 vision in the right eye. He found nothing organic upon which to base plaintiff’s complaint with regard to the fogginess or deficiency of sight in his right eye.
Dr. Duane Foreman, a neuro-surgeon, also testified on behalf of the defendants. He first examined plaintiff on May 2, 1957 and found no objectively abnormal signs on this neurological examination. Plow-ever at the time of the examination and according to a report which he made on May 30th he considered Brown still “totally disabled in regard to performance of his usual work and that his disability might persist for an additional two or three months.” The basis of this total disability was the apparent sincerity of the complaints made by plaintiff such as headache, and low back pain and a consideration of the fact that he had been “knocked out and had sustained fairly severe trauma to the body generally if he had been knocked off the tractor.”
Dr. Foreman examined plaintiff again on October 22, 1957 and still found no objective abnormal symptoms. He felt that plaintiff had no cause for disability at that time due to any organic damage or involvement of the nervous system. Pie definitely testified that he did not think the plaintiff was malingering but on the contrary presented a picture of “being straight forward' and honest in his remarks * * * ”.
Plaintiff was examined by Dr. Joseph M. Edelman of Baton Rouge on behalf of the *157 defendants on September 24, 1957. As a result of his examination and the tests which were given to the plaintiff, Dr. Edel-man could find no reason for his multiple complaints and no disability in the patient as the result of an injury of Feb. 7, 1957. He found plaintiff to be very cooperative during the examination, and quite rational.
In addition to the above there is testimony from employers for whom plaintiff attempted to work subsequent to his injury, to the effect that his work was most unsatisfactory; that he was not the same mentally as before the accident, that he just couldn’t do the work and had been discharged for that reason. Also in the record is the testimony of laymen along with that of his wife wdiich would substantiate the contention of his counsel that plaintiff was permanently disabled by virtue of having suffered a traumatic neurosis or a breakdown in his defenses to schizophrenia which Dr. Caruso described, as a result of the injuries he suffered in the accident.
Based upon the record, the evidence of which has been reviewed somewhat in detail, the lower court found that plaintiff was totally and permanently disabled. We find no manifest error in the judgment of the lower court as to plaintiff’s disability.
Counsel for plaintiff has asked in his answer to the appeal that the award insofar as the weekly payments are concerned be increased to $35.00 per week. He cites us to no evidence and we find none in the record which would justify such an increase. However, the record shows that plaintiff earned an average of $36.00'per week prior to the accident, which would be $7.20 per day, and instead of computing his compensation on a five day basis it should have been done on a six day basis (LSA-R.S. 23:1021; Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399) or $43.20 per week, which would entitle him to an award of $28.08 per week. We also note that the judgment does not carry 5% interest from the due date of all past due weekly payments. It is therefore ordered that the judgment of the District Court be amended by fixing the weekly sum to be paid plaintiff in the amount of $28.08 together with 5% interest from maturity on all past due payments.
As to counsel for plaintiff’s request in his answer to the appeal that Dr. Posey’s fee for the deposition given in this case be fixed at $150.00 rather than $50.00 as fixed by the Lower court in its judgment, we find that his bill for the two hour examination including the test made during that time was $85.00. His deposition consisted of forty pages, each being six inches wide by nine inches long. There is nothing in the testimony fixing the length of time set for him to give this testimony in this deposition. We see nothing in the record that would justify this court in awarding to this doctor $150.00 and only $50.00 to the other doctors who testified herein.
This bring us to a consideration of an exception of no cause or right of action which was filed by the third party defendant to the third party plaintiff’s petition based upon the contention that the third party practice act and Louisiana Compensation Statute do not authorize an employer or his workmen’s compensation insurer to implead an alleged third party tort feasor. In addition, there is a second contention in which third party defendants question the sufficiency of the third party petition as to whether it states a cause of action in tort against the third party defendant.
Counsel for third party defendant in his brief contends:
“For practical reasons it is evident that the Third Party Practice Act should not be construed in such a manner as to allow the joint trial of two inconsistent and incompatible actions. The trial in this case shows that no two types of action could be more incompatible than one for compensation and one for damages in tort. The reasons are obvious. The standards of liability are wholly dissimilar and the ultimate relief to be granted is inconsistent. While the defendant cast in an ex delicto *158 action is entitled to have his liability fixed by a conclusive and definitive judgment for damages in the sum certain, the compensation defendant is cast in a judgment conditioned upon the future disability of the plaintiff and one which is neither final or conclusive as to amounts. [LSA-] R.S. 23:1317 specifically provides that rules of evidence and procedure are to be materially relaxed for the trial of a workmen’s compensation suit and, therefore, it is impossible to follow the statutory mandate accorded the compensation plaintiff and yet guarantee the third party defendant its rights to a trial where the customary rules of procedure and evidence are adhered to.
“Our courts have refused to permit a consolidation for trial of a workmen’s compensation suit and a tort action, McCormick vs. Kansas City Southern Railroad Co., U.S. D.C.La.1926, 11 Fed.2d 670, recognizing that the actions grew out of different relationships with different defenses and are incompatible in one trial. The ultimate effect of permitting the defendant employer in a workmen’s compensation suit to implead the alleged tort feasor by a third party petition would be to force a consolidation of such actions in every instance where the injured party first files a suit in compensation against his employer. Thus, in the recent decision of the Supreme Court in Marquette Casualty Company vs. Brown, 1958, 235 La. 245, 103 So.2d 269, it was held that only one action ex delicto may be instituted by either the employer or the employee against an alleged negligent party and that when one has been instituted, the other party, whether it be employer or employee, is thereafter precluded from bringing a separate suit in tort. Justice Mc-Caleb said:
“ ‘Considering the provisions of R.S. 23:1101, 1102 and 1103 together, it seems plain that there is but one cause of action recognized for the recovery of damages resulting from a single tort. However, the right of redress against the tort feasor has been extended by the provisions to the injured workmen’s employer, who is accorded a preferential right to recover, out of the judgment for damages which may be assessed against the tortfeasor, the amount of compensation he has paid or become obligated to pay to the injured employee. This right is, of course, conditioned upon the basic right of the employee to recover damages and, according to R.S. 23:1103, if the damages awarded are for an amount less than the total compensation paid, the employer’s recovery is accordingly limited to that amount. Thus, though the compensation paying employer is given the preferential right to reimbursement out of the judgment, recovery is necessarily restricted to the amount for which the tortfeasor is liable to the injured employee for the consequences of his wrongful act. In addition, whenever a suit is brought against the tortfeasor by either the employer or the injured employee, the statute required that the plaintiff give notice to the other interested party. Accordingly, should the injured employee institute suit, the compensation paying employer, upon notification thereof, no longer has the right to bring an independent action; he must intervene in the employee’s suit or his right to reimbursement for compensation will be lost.’ ([103 So.2d at pages] 271 and 272)
“It is seen from this language that the institution of a third party petition against a tort feasor by the employer would in effect force the employee to bring his tort claim against the third party defendant, as he is barred from filing a separate suit, therefore, resulting in a consolidation for trial in all such cases the compensation suit and the tort action. The Third Party Practice Statute was not designed to work such a radical change in our procedure.
“Aside from the right vel non. of the employer to implead the alleged tort feasor, the third party petitions in this case are defective, state no cause of action, and, *159 accordingly, should have been dismissed. The prayer of these petitions is as follows:
“ ‘Alternatively, and only in the event that defendants, M. A. Pope and Crown Zellerbach Corporation, be cast in judgment herein on the principal demand of plaintiff, Morris Brown, defendants further pray that judgment be rendered against third party defendants, C. R. England & Sons and Travelers Indemnity Company, in favor of defendants, M. A. Pope and Crown Zellerbach Corporation, for any and all sums for which they may be adjudged liable unto plaintiff, and more particularly the full amount of any judgment or judgments rendered in favor of Morris Brown, plaintiff in the principal demand, together with interest thereon at the rate of 5% per annum from date of judicial demand until paid, to a reasonable attorney’s fee to be fixed by the court, and all cost of this proceeding; that said judgment be rendered against defendants, C. R. England & Sons and Travelers Indemnity Company, Jointly, severally and insólido.’
“There are no factual allegations in the petitions relating to the damages sustained by the injured party, Morris Brown, and no claim for damages is made in the prayer, and further, no specific object or amount is demanded.”
LSA-R.S. 13:3381 reads:
“Defendant in principal action may bring in third person. In any civil action presently pending or hereafter filed the defendant in a principal action may by petition bring in any person (including a co-defendant) who is his warrantor, or who is or may be liable to him for all or part of the principal demand.
“In such cases the plaintiff in the principal action may assert any demand against the third-party defendant arising out of the transaction or occurrence that is the subject to the principal demand. The third-party defendant thereupon shall plead his objections and defenses in the same manner as prescribed for an original defendant in an ordinary action and may reconvene against the plaintiff in the principal action or the third-party plaintiff, on any demand arising out of the transaction or occurrence that is the subject matter of the principal demand, in the manner prescribed. for reconventional demands. Acts 1954, No. 433, § 1.”
LSA-R.S. 13:3384 reads as follows:
“Service of citation, pleadings. A citation and certified copies of the following pleadings shall be served on the third-party defendant in the manner prescribed by law for service in an ordinary proceeding; the petition in the third-party demand; the petition in the principal demand; the petition in the reconventional demand, if any; and the answers to the principal and re-conventional demand filed prior to the issuance of citation in the third-party action. Acts 1954, No. 433, § 4.”
LSA-R.S. 13:3385 reads as follows:
“Defenses of original defendant available to third-party defendants. The third party defendant may assert against the plaintiff in the principal action any defenses which the third-party plaintiff has against the principal demand. Acts 1954, No. 433, § 5.”
LSA-R.S. 13:3386 reads as follows:
“Third-party defendant may bring in third person. — Any third-party defendant may proceed under this Chapter against any person who is or may be liable to him for all or any part of the third-party demand. Acts 1954, No. 433, § 6.”
In Plummer v. Motors Insurance Corporation, 233 La. 340, 96 So.2d pages 605, 609, the Supreme Court of Louisiana had under consideration the third party practice act, LSA-R.S. 13:3381 et seq. and stated:
*160 “Third-party defendant, General Motors Acceptance Corporation, contends that its exception of no cause of action should have been sustained because Motors Insurance does not have a cause of action against it under the provisions of the Third Party Practice Act, R.S. 13:3381 et seq. R.S. 13:3381 provides in part:
“ ‘In any civil action presently pending or hereafter filed the defendant in a principal action may by petition bring in any person (including a co-defendant) who is * * * or may be liable to him for all or part of the principal demand. * * * ’
“For a discussion of this statute see Bourree v. A. K. Roy, Inc., 232 La. 149, 94 So.2d 13; Ferrantelli v. Sanchez, La.App., 90 So.2d 351; Motors Securities Co. v. Hines, La.App., 85 So.2d 321; Automotive Finance Co. v. Daigle, La.App., 80 So.2d 579.
“Although the Louisiana Third-Party Practice Act is new, having been passed in 1954, the idea of third-party practice is not a recent one. The device has been used for many years in the English courts and in Admiralty practice, and had already been adopted in half a dozen states in 1938 when it was incorporated in the Federal Rules of Civil Procedure, 28 U.S.C.A. See Willis, Five Years of Federal Third Party Practice, 29 Va.L.Rev. 981, (1943)
“One of the purposes of the third-party action is to allow a defendant in a civil action to implead one who will be secondarily liable to him if plaintiff’s suit against him is successful. It is an important procedural device, the purpose of which is to avoid needless multiplicity of actions.
“We believe that the instant suit is an excellent example of the validity of the third-party action. If General Motors Acceptance Corporation had not been brought into this case as a third-party defendant, Plummer’s recovery from Motors Insurance on the ground that the insurance company breached its obligation as a depository by failing to return Plummer’s truck would enable Motors Insurance in turn to file a separate suit against General Motors Acceptance Corporation to recover in quasi-contract or tort the amount it had been ordered to pay Plummer in the earlier suit.
“It is our opinion, therefore, that in the instant case Motors Insurance stated a cause of action against General Motors Acceptance Corporation under R.S. 13 :3381 by alleging in answer to Plummer’s petition that his damaged truck had been taken from it by General Motors Acceptance Corporation, that the Acceptance Corporation was liable to Motors Insurance for all or part of any sum it might be ordered to pay Plummer, and that therefore General Motors Acceptance Corporation should be named a defendant in the case and cited in accordance with R.S. 13:3381.”
There is no question but that .the defendant-employer-third party plaintiff herein is specifically granted their cause of action against the third party defendant herein under LSA-R.S. 23:1101 which stated:
“ * * * _¿\ny employer having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third persons to recover any amount which he has paid or become obligated to pay as compensation to any injured employee or his dependent.”
Therefore, when the plaintiff filed suit for compensation against the defendant-employer, the latter, under the facts surrounding the accident had a cause of action under LSA-R.S. 23:1101, supra, against the third party defendant, and was specifically empowered to bring the latter into the suit as third party defendant under *161 LSA-R.S. 13:3381, supra, for the third party defendants would be liable to the defendant-employer-third party plaintiff, for any amount of the principal demand for compensation which might be awarded to the plaintiff as against the defendant employer by judgment herein.
It must also be remembered that there is but one cause of action against the tort feasor for injuries sustained by an employee, which may be instituted either by the employee himself or by the employer for reimbursement for compensation paid, and that such an action is governed by the prescription of one year set forth in Articles 3536 and 3537 of the LSA-Civil Code, which commences to .run from the date on which the damage was inflicted by the defendant, which is the date of the accident, and the failure of the plaintiff-claimant or defendant-employer to assert its claim within the one year prior would be fatal to such an action. Marquette Casualty Company v. Brown, 235 La. 245, 103 So.2d 269.
The defendant employer, third party plaintiff, when sued for compensation by the plaintiff-claimant herein, had a perfect right and exercised it, to implead an alleged third party tort feasor, who in this case was the named third party defendants.
While we realize the force of the argument contained in the brief of counsel for third party defendant that the two types of actions are somewhat incompatible in that the standards of liability are wholly dissimilar, and the ultimate relief to be granted might appear to be inconsistent, the ultimate result is the same, whether suit for compensation by the plaintiff claimant is tried separately, and then a separate suit filed by the defendant employer against the third party tort feasor for the recovery of the compensation awarded to the plaintiff-claimant, and where, as in the present instance, suit is filed for compensation and the defendant-employer, under the third party practice act, then impleads the third party tort feasor under the right granted to the former by LSA-R.S. 23:1101. As a matter of fact, it would seem to be an advantage to the alleged tort feasor to be represented by counsel at the trial of the compensation suit which, as- in the present suit, is being strenuously contested.
Counsel’s argument that a defendant cast in an ex-delicto action is entitled to have its liability fixed by a conclusive and definitive judgment for damages in a certain sum as correct, but there is a maximum limit imposed by law in the case under consideration. The plaintiff claimant for compensation has not filed nor intervened in the suit by the defendant employer against the alleged tort feasor, third party defendant, and can never do so as his rights have prescribed in that respect, in accordance with the express holdings in the Marquette Casualty Company v. Brown, supra. In the case at bar, had we reached the conclusion that the third party defendant was legally -responsible for the injuries suffered by the plaintiff claimant for compensation, it would be necessary that we then consider the measure of damages within the limits fixed by the amount awarded as compensation to the plaintiff-claimant.
What difference would it make whether a defendant-employer recovers from a third party tort feasor under LSA-R.S. 23:1101 in a separate .action or in a suit where the defendant employer is being sued for compensation and impleads the third party. defendant under the Third Party Practice Act? We see none. The rights of the plaintiff-claimant are to be adjudged in accordance with the compensation laws and jurisprudence while the rights of the defendant-employer against the alleged tort-feasor, third party defendant, are to be adjudged in accordance with the law of torts and rules of evidence applicable thereto. That is exactly what would be done if the two suits were separate. The law says that if a plaintiff in a compensation suit, as in the case at bar, is awarded judgment of weekly payments not *162 to exceed 400 weeks the employer is entitled to recover this amount from a third party under a legal liability to pay damages with respect thereto.
The arguments of counsel for the third party defendant in his brief, supra, are answered, we believe, by the discussion of the third party practice act with Judge Tate as the organ of this Court, in Automotive Finance Co. v. Daigle, supra [80 So.2d 580], in which we stated:
“As was pointed out by Professor Henry G. McMahon, acknowledged authority on Louisiana practice and procedure, in his review of 1954 Legislation concerning ‘Courts and Judicial Procedure’, 15 La. Law Review 38, 46-49, discussing the Third-Party Practice Act above, this Act was adopted by the Legislature under the recommendation of the Louisiana State Law Institute. It is based upon federal third-party practice, especially Federal Rule of Civil Procedure 14(a), 28 U.S.C.A., and tracks with identical verbiage except for section numbers, the recommended Institute text. The specific purpose as proposed was to enact an even broader third-party practice than is contemplated by the Federal Rules.
“Even under the federal third-party practice, which omits the provision that a third-party plaintiff may bring in a third-party defendant ‘who is his warrantor’, and which permits the exercise of judicial discretion in admitting the third-party defendant as an additional party, the impleading of the present vendor as a third-party defendant would probably be permitted under the facts of this case; see United States v. Hecht, D.C., 9 F.R.D. 340; United States v. Pryor, D.C., 2 F.R.D. 382; Fruit Growers Co-op. v. California Pie & Baking Co., D.C., 2 F.R.D. 415; Jeub v. B/G Foods, D.C., 2 F.R.D. 238; Hubshman v. Radco, Inc., D.C., 71 F.Supp. 601; Balcoff v. Teagarden, D.C., 36 F.Supp. 224. The latter case, for instance, concerned a suit by an author in damages for the unauthorized performance of his song by the original defendant; this defendant successfully impleaded as third-party defendant the plaintiff-author’s sister alleging her liability for any damages because of her alleged breach of warranty in representing that she was authorized by plaintiff-author to request the original defendant to perform this song.
“Federal cases such as United States v. De Haven, D.C., 13 F.R.D. 435 and United States v. Jollimore, D.C., 2 F.R.D. 148, which did not permit im-pleading of a third-party defendant under circumstances similar to the present, can probably be distinguished in the reliance therein upon the judicial discretion permitted by Federal Rule 14 and explicitly omitted from the Louisiana Act.
“As remarked by Professor McMahon in his review of the 1954 Legislature, 15 La. Law Review 49, adoption of these particular sections of the pro jet of the new Code of Practice without adopting of related sections will result in some procedural problems in this innovation of third-party practice. But the remedy therefor is for the Legislature and not the courts.”
The Third Party Practice Act specifically and explicitly in its provisions, and regardless of the difficulty which might or might not be encountered in trying a compensation suit and tort action (which was also evidently true in the case of Automotive Finance Co. v. Daigle, supra, which involved a suit on a promissory note by the finance company and under the third party practice act the vendor of the automobile was impleaded as the third party defendant as warrantors who would be liable to *163 the defendant purchaser if the allegations that the automobile was defective were true) permits the defendant-employer-third party plaintiff herein to implead as third party defendant the alleged tort feasor and its insurer who is.also liable over to the present defendant-employer for any judgment recovered against the latter by the present plaintiff if he can prove the allegations of his petition against the third party defendant and is not barred by his own or plaintiff’s contributory negligence.
As to the contention of the third party defendant that the third party plaintiff’s petition in this case is defective, states no cause of action and, accordingly, should have been dismissed, we are of the opinion that their petition is not as complete in its allegation of fact as it should be, and would necessitate a discussion and decision on this point were our conclusions on the merits of the claim of the third party plaintiff as against the third party defendant favorable to the third party plaintiff. However, in view of our conclusion in favor of the third party defendants and against the third party plaintiff on the merits of the latter’s claim we deem it unnecessary to decide this question.
Next to be considered is the claim of the third party plaintiff and the defense thereto by the third party defendants. The evidence shows without the least doubt that this accident happened before daylight and at a time when the fog was so dense that plaintiff’s own witness fixed the distance which one could see with his headlights at not more than sixty-five feet. The distance which he pointed out in the court room was estimated by the judge to be SO feet. It is also proven that this tractor had no tail lights on it and no headlights. Further it is most doubtful as to whether the pulpwood truck had any tail lights, but if it did it is also most probable that the tractor being pulled or towed to the rear of these tail lights obscured them or it. There is some testimony that there was only one light on the rear which had been converted into a tail light from a signal light. The driver of the England truck testified positively that he saw no lights at all on the rear of the tractor or the truck prior to striking it. There is some testimony by the driver and owner of the truck that it had a tail light.
It is contended, however, that it is immaterial as to whether there were any lights on the tractor or truck as a witness for plaintiff testified that he had followed the England truck for some four or five miles and that during this time it had attempted to pass this tractor and truck several times, and therefore knew of its presence on the highway. While this witness was attempting to tell what he believed or thought was the cause of this accident, there are some facts which would make his version most improbable. For instance, he testified that the driver of the England truck attempted to pass in the face of oncoming traffic and realizing that it would be a head on collision was forced to pull back toward the north or right lane of traffic, and in doing so struck the tractor. He then stated that he did not see the oncoming traffic himself until after it had passed subsequent to the actual collision and the pulpwood truck had gone off of the road and the England truck had proceeded down the road 100 feet or 200 yards as testified by this witness. Plaintiff’s witness was traveling behind the Studebaker car which was traveling behind the England truck, and how he could see the England truck strike the left rear wheel of the tractor is almost unexplainable. We believe that he thinks that it happened »as he told it but do not believe that he could see the details which he described, due to the dense fog, the extreme poor visibility and the car in front of him. There is evidence by the driver of the England truck that the traffic was approaching in the east lane, however, it is a self evident ,fact that it was not close enough for a head on collision as the England truck pulled from the north or west bound traffic lane into the south or east bound traffic. lane in an effort to avoid *164 striking the tractor and pulpwood truck, and in doing so the right front bumper knocked the left rear wheel of the tractor off and it proceeded in a southerly direction across the east bound traffic lane, which is the proper way for it to have gone considering the manner in which the force was applied to it at the moment of impact. The England truck then proceeded in the east bound traffic lane along the side of the pulpwood truck and struck it in the left hand door and knocked it off of the highway to the north and then proceeded on and got back into the west bound traffic lane. Had the approaching traffic been as close as described by plaintiff’s witness, a collision would have been unavoidable, between the England truck and the approaching traffic. It must be remembered that visibility was limited to fifty or sixty-five feet at most.
There is also testimony by the only State Trooper who talked to the driver of the England truck as well as the other witnesses, that the former told him “That he had passed one vehicle and realized that he didn’t have time to pass the one he struck, that he tried to cut back in and was apparently driving too fast to get in without striking the subject and tried to cut back to his left.” At another place in his testimony the trooper stated that the driver of the England truck told him he was trying to pass two cars at one time. Of course, this would be impossible for under the testimony there was only one car in front of him and, further, it would have almost been impossible for the first car that he passed to have avoided piling into the truck. This witness also testified that the driver of the England truck had stated “to me that prior to the accident at the time he noticed that there was going to be an accident, it was unavoidable, he was traveling approximately 45 miles an hour and racked to 20 miles an hour at the time of the impact.”
We don’t doubt for one minute that this Trooper was testifying to exactly what he thought was told him by the various parties, however, the record does not show whether he wrote it down at that time or later and he frankly admitted that if he did not have the report to refresh his memory he would not be able to testify as to what was told to him.
It is the version of the driver of the England truck that he was traveling at 40 to 45 miles per hour and that he saw no lights of any kind and when he got within the distance which he estimated at approximately 60 feet he saw the truck loom up in front of him and in order to avoid striking it squarely in the rear as it was going 15 to 20 miles per hour, he pulled to his left and in doing so the front bumper knocked the left rear wheel of the tractor off, and after that he doesn’t know how he struck the front door of the truck as he was having a very hard time keeping the truck on the highway. He testified that he had never attempted to pass this pulpwood truck and was not attempting to pass at that time but was forced to take action due to the fact that it had no lights and he could not see it in time to avoid a collision other than by attempting to take the east bound or south lane of the highway; that his speed was forty to forty-five miles per hour while that of the pulpwood truck was fifteen or twenty miles an hour.
Regardless of whether the driver of the England truck was guilty of negligence, we believe that the plaintiff was guilty of contributory negligence as well as the driver of the pulpwood truck. Here we have the plaintiff sitting on the seat of an unlighted tractor attached to the rear end of a pulpwood truck which, in itself, was very difficult to see and particularly under such weather conditions. In addition, it is very dottbtful that the truck had any tail light, or if it did, most probably as previously stated, it was completely obscured by the position of the tractor being towed to its rear. For Morris Brown to have placed himself in such a position under the facts was contributory negligence and for the *165 driver of the pulpwood truck to have driven this truck on this heavily traveled highway with no tail light or with the tail light obscured by the tractor attached to its rear, was contributory negligence.
Neither the truck nor the tractor were inspected by the troopers for lights or lack thereof. We do not attribute any deliberate attempt to falsify any evidence in this case. We do not believe, however, that the State Trooper confused the two versions given him by the driver of the England truck and one of the plaintiff’s witnesses, to the effect that the driver of the England truck had just passed one vehicle and was attempting also to pass the truck when met by approaching traffic, and in order to avoid a head on collision, pulled back to his right, striking the tractor. In line with this version it is more impractical and improbable that the driver of the England truck, in attempting to pass two vehicles and seeing that he could not make it on account of approaching traffic, cut back to his right in an attempt to get behind the pulpwood truck, and realizing that he could not successfully do so without striking the truck, then pulled back to his left or into the east or south bound traffic lane in the face of this approaching traffic which plaintiff’s witness described as being so near that a head-on collision was imminent. The driver of the England truck surely would not have pulled back out into the face of this approaching traffic and sure collision and probable death.
For the reasons given, the judgment of the district court in awarding judgment in favor of the defendant and third party plaintiff and against the third party defendants must be annulled and reversed and it is now ordered, adjudged and decreed that there be judgment in favor of the third party defendant and against the third party plaintiff, dismissing their suit at their costs.
Amended and affirmed in part and reversed in part.