GAUDIN, Judge.
Appellant Gary D. Allan, a salesman, contends that he sustained injuries in an automobile accident and that the district court erroneously denied him workmen’s compensation benefits.
The record, however, substantiates the trial judge’s determinations and we affirm the judgment.
The unique facts are these:
Allan had paused for a stop sign on August 25, 1976, when his automobile was rear-ended by a vehicle operated by Warren Schlesinger and insured by Allstate Insurance Company.
The impact was not severe and Allan told the investigating police officer that he “... had a headache, it wasn’t bad...” and that “... everything seemed to be all right.” When he arrived at his home following the accident, Allan said he experienced “... shooting pains through the back and the headache was worse... ”, so he consulted a chiropractor and, later, various physicians.
*1252 Allan testified that he advised his supervisor about the accident but that he wasn’t interested then in making a workmen’s compensation claim against his employer and its compensation carrier, Travelers Insurance Company.
Instead, Allan made demand on Schlesinger and Allstate and entered into a compromise settlement for $7,200.00. Subsequently, Allan alleged that he was “... heavily sedated...” when he accepted the settlement funds and executed a release, and he filed suit to void the agreement. This litigation was unsuccessful.[1]
Meanwhile, Allan had filed a workmen’s compensation petition against his employer and Travelers, who in turn made a third party demand on Schlesinger and Allstate. Three days prior to the workmen’s compensation trial, Allan, Schlesinger and Allstate entered into a second settlement whereby Allan received an additional $18,000.00 and agreed to indemnify Schlesinger and Allstate should they be cast in judgment as third party defendants. The record does not contain an explanation regarding the second settlement but perhaps it was because Allstate felt seriously exposed as a third party defendant.
It is Travelers contention that the indemnity agreement connected to the second settlement made the workmen’s compensation trial an exercise in futility. Had a judgment been rendered in Allen’s favor against Travelers, Travelers would necessarily have received a third party judgment against Schlesinger and Allstate,[2] and Allan would then have had to indemnify Schlesinger and Allstate.
Nonetheless, the workmen’s compensation case was tried on October 1 and 2,1981.
Allan stated that he had been seen and/or treated by a number of doctors, that he was still experiencing pain and that he had suffered an adverse psychological reaction.
Following the two-day trial, the judge made these findings:
(1) The refusal of Travelers Insurance Company was not arbitrary or capricious;
(2) Plaintiff (Allan) was looking to Allstate for settlement;
(3) The psychological injury complained of by plaintiff was not causally connected with the accident;
(4) The compensation paid by Allstate was adequate compensation for the injury suffered by the plaintiff in the accident; and
(5) The plaintiff suffered no permanent injury as a result of this accident; his partial injury had long ceased to exist.
The record is uncertain as to Allan’s contacts with Travelers regarding first notice of the injury and his later demand for compensation benefits[3]. While Allan did not give formal, written notice, Travelers’ records indicate that Allan discussed his accident with Nathan Gremillion, a Travelers adjuster, on March 16, 1977. As a result of this telephone conversation, Gremillion set up an appointment with Dr. E.J. Dabezies, an orthopedist.
Dr. Dabezies saw Allan on April 5, 1977, and found:
“... there was no impairment in mechanics of motion. From the objective view-point it would be concluded that the effects of the injury had resolved. I do not think that hospitalization for therapy, diagnostic procedures or surgery is anticipated. There are no objective findings on which to base a residual disability rating. I think that this man can continue at his job without restriction of activities.”
Primarily as a result of this report, Travelers declined compensation benefits.
*1253 Dr. Richard W. Levy, a neurosurgeon, saw Allan on November 3, 1976, at the request of Allstate. He testified that there were “... no objective findings at all... ” and that “. . . the examination was perfectly normal...” except for “. . . slight tenderness over the low back regions...”
The only medical testimony supporting Allan’s alleged psychological disability came from Dr. John Sullivan, who examined Allan for 80 minutes on September 1, 1978, and rendered this in-court opinion:
“. .. during the entire interview there were no signs of a sensorial abnormality nor of a formal thought disorder. The patient tended to take over the interview. He immediately asked me to avoid smoking because of his life long allergies. Unsurprisingly he wished to steer the conversation towards an explication of his troubles. Towards the end of the interview I find that his emotional state may be the cause or at least contributory to his problem. He did not vehemently deny this but rather was almost blandly unconcerned with this possibility. As noted above, when his background was probed he responded immediately with intimations of his sexual aggressiveness and virility. He described his marriage as one of constant sexual frustration and disappointment. He mentioned that his mother-in-law, whom he does not like, has lived in the family home for over a decade. He says that she had originally planned to live there a couple of weeks. “... the patient presents himself as a very aggressive, forceful, and hard working businessman who has been disabled as a result of an injury incurred in August, 1976. Yet, it is equally noticeable that he has not chosen to pursue positions of greater scope and responsibility. He has maintained a marriage with a woman who does not share his relish for sexual exuberance. He finds himself saddled with a clinging wife, son and mother-in-law. I think it is dynamically fair to say that he clings right back although he could not see it that way. Rather than the self-possessed image that he projects. We find a man who involves himself in hostile-dependent situations. This, I think, is the relationship that is operating with his insurance companies. The giving up of his somewhat obscure symptoms would end the unconscious dependent relationship. I would emphasize that I have no reason to suspect that he is consciously fabricating his pain or anxiety. He is, of course, frustrated with his immobility, pain and inability to provide for his family as he once did.
“... there is no doubt in my mind that this unfortunate man is disabled. It seems medically certain that his problem resides not in his spine but in his psyche. I believe that he became psychologically symptomatic in August, 1976. I can only suggest an analogy. In order for a plant to grow, not only a seed but also soil fertile to that seed must be present. The plant in this instance is the pain that he feels. The soil is that of a personality disorder and the seed is the accident of August, 1976.”
Actually, Allan has an extended medical history going back at least to 1963, when he consulted Dr. Hanckes Klein because of chest pains.
Approximately one year before the sued-on accident, Dr. Klein referred Allan to Dr. Morton Ziskind.
Dr. Ziskind wrote:
“I examined Gary Allan on August 14, 1975. He is a 38-year-old ... salesman of educational materials. He served in the United States Air Force for four years and has service-connected disabling allergy of the upper respiratory tract. His past medical history includes a tonsillectomy and a vasectomy, but the principal disorder is allergy going back to childhood. Multiple sensitivities have been noted. Originally, the hypersensitivity expressed itself by wheezing. Since the age of 19 he has had blockage of the nose with frontal headaches radiating about the head, popping of the ears, maxillary pain, and postnasal drip. The illness has become progressively worse and talking often becomes difficult because of hoarse *1254 ness and blockage of the nose. Postnasal drip is almost continuous and has to be relieved frequently. He has also noted tightness of the chest with occasional wheezing. Sneezing has induced syncope. As a consequence, his sales activity has been reduced to one day per week. He has excessive reactions to drugs which he takes, notably adrenal corticoids. He is unable to sleep because of the blockage of the nose and dripping. The use of Cele-stone, an adrenal corticoid, produces ar-thralgias, nausea, and gastrointenstinal upsets. At present, he is being treated with a mixture of an adrenergic agent and histamine. Such drugs along or in combination are effective for only short periods of time. His weight is steady at about 200 pounds. He has never smoked cigarettes or used alcohol. He does not abuse narcotics.
“His activity is reduced. He has difficulty in climbing stairs. He cannot run and his ability to swim is reduced. He has burning of the epigastrium and a bloating sensation, also related to medications. He gets up once a night to urinate and drinks excessive amounts of water. Episodes of sneezing have produced faintness, and he is depressed. There is no season to his illness, but it is worse with dampness. There is no morning cough but he develops chest pain related to gas and possibly related to air swallowing. There is some blood streaking from his nose. There have been no recent lower respiratory infections and no history of pneumonia. There is occasional ankle swelling but no palpitation. In addition to the medications previously noted, Mr. Allen takes Valium.
“The physical and laboratory examinations confirm the presence of severe upper respiratory allergy which interferes with breathing, speaking, and sleeping, and has greatly reduced Mr. Allan’s ability to perform his ordinary line of work, which requires personal address and the ability to carry out prolonged conversations. His work is interfered with by the nasal block, discharge, and change of voice. In addition, his sleep disturbance makes it difficult for him to concentrate on his work and places him in a state of constant easy fatigability. All combinations of treatment to date have been ineffective in Mr. Allan’s case, and he has sought the aid of a chiropractor to reduce the discharge from his nose. Surgical correction of the nasal septum has not been attempted because of the risk of adverse drug reactions in the pre or postoperative period. At this time, his condition is growing worse. The principal modalities of treatment have already been tried in his case and there appears to be no basis for improvement at this time, and prognosis is therefore uncertain. The evidence indicates that he is incapable of performing any sustained physical or intellectual work, such as that he did in the past.”
Considering the medical testimony and evidence in toto, we cannot say that the trial judge was manifestly erroneous[4] in deciding that Allan’s psychological problems were not causally related to the August 25, 1976, accident, and that Travelers acted neither arbitrarily nor capriciously.
Although appellant argues that Dr. Sullivan’s psychological findings were uncontro-verted and that witnesses are “weighed” and not merely counted[5], it was well within the trial judge’s discretion to conclude as he did and we affirm the district court’s judgment in favor of Allan’s employer and Travelers Insurance Company.
AFFIRMED.

. No. 201-858, 24th Judicial District Court, Parish of Jefferson, Allan v. Schlesinger and Allstate Insurance Company; affirmed at 367 So.2d 86.

. As in Brown v. Crown Zellerbach Corporation, 112 So.2d 150.

.See Moore v. St. Paul Fire and Marine Ins. Co., 251 La. 201, 203 So.2d 548 (1967) for a discussion of notice and demand for payment.

. As required by Canter v. Koehring Company, 283 So.2d 716 (La.1973).

. See U.S. Fidelity and Guaranty Co. v. Fiffie, 211 So.2d 690.