HARDY, Judge'.
This is a compensation suit in which plaintiff claimed total permanent disability at the maximum weekly rate from his employer and insurer. After trial there was judgment rejecting plaintiff’s demands, from which he has appealed.
Plaintiff, employed by defendant, T. L. Kennedy, was injured on July 24, 1952, while engaged in cutting timber on a tract of land in Union Parish. A pine tree felled by plaintiff and his co-worker struck a black gum tree, 'breaking a large limb therefrom, which limb fell upon plaintiff, striking him upon the head and inflicting serious and allegedly permanent injury. Plaintiff was removed to Marion Clinic and Hospital in Union Parish where he was hospitalized for a period, of eleven days. Compensation was paid at the rate of $22.75 per week by defendant insurer from the date of the accident through date of February 4, 1953, at which time payments were terminated.
Plaintiff alleged that as the result of the accident he sustained an injury to his brain which caused excruciating pain; dizzy spells and swelling of the eyes, continuing until about the first of December, 1952, .since which time
“ * * * if petitioner exerts himself physically, the headaches and dizzy spells return and petitioner’s vision is affected.”
It was further alleged that being unable to perform any nature of manual labor by reason of the headaches and dizzy spells, plaintiff had entered Southern University in September of 1952 but was unable to apply himself to his studies and was forced to return to his home. Finally, plaintiff contended that he was totally and permanently disabled.
The question of disability which is presented by the instant case must be resolved upon the basis of the medical testimony comprehended by the record. Plaintiff relies upon the expert testimony of Dr. J. N. Jones, a general practitioner of Bas-trop, Louisiana, and Dr. C. M. Lobrano, an expert radiologist of Monroe.
Study of the testimony of Dr. Jones, given on trial of the case on February 17, 1954, reveals that the doctor saw plaintiff in his office on the 11th of November, 1953, but if he made any examination at that time his testimony fails to disclose the extent and the result thereof. The witness’ opinion, according to his testimony, was based upon a history of the case as related to him by plaintiff and the examination of x-ray films which had been taken by Dr. Lobrano. In the first place, the history was unquestionably erroneous inasmuch as plaintiff informed Dr. Jones that following the accident he had been unconscious for a period of four days. This fact is conclusively disproved by the record in the case, and particularly by the testimony of the physician who was in charge of the Marion Clinic in which plaintiff was a patient following his injury. It is uncontrovertibly established that plaintiff was unconscious for only a few hours.
*258 Continuing with the evaluation of Dr. Jones’ testimony, we think the witness himself succeeded in establishing the fact that he was not in any degree whatsoever an expert in the interpretation and evaluation of x-ray films. At one point in his testimony the witness was exhibiting and interpreting his finding of a fracture in a left lateral view of plaintiff’s head, depicted by an x-ray film taken by Dr. Lobrano, and purported to make a comparison between the left lateral and right lateral views simply by examining the reverse side of the left lateral film. Inexpert though we may be in the field of medical science, even ordinary common sense would indicate that a left lateral x-ray film cannot be converted into a right lateral simply by turning over the film. Finally, we point out that the doctor’s opinion as to plaintiff’s inability to work is without any factual foundation, as evidenced by the following question and answer on cross-examination :
“Q. Now, Doctor, you stated this man couldn’t do work. What do you base that opinion on? A. Well, that fractured skull he’s got there, that traumatism it did to his brain bound to done something. When — for a man to be unconscious as long as he was he musta had a terrible blow.”
Notwithstanding the witness’ testimony as to the evidence of fractures represented in the Lobrano films, we think the testimony taken as a whole is completely unconvincing.
Turning to the testimony of Dr. Lobrano we find that he made x-ray films of plaintiff’s skull on November 20, 1953 and determined what he considered to be the existence of a linear fracture of the right frontal region measuring some two or two and one-half inches in length. This witness testified, on the basis of his opinion as to the existence of a fracture, that plaintiff’s subjective complaints could have resulted from the accidental injuries, but he consistently refused to express a definite opinion as to disability, qualifying his conclusion of serious results upon the history of continuing unconsciousness over a period of four or five days. On direct examination the witness testified that “ * * * a simple fracture may not cause much trouble,” but that fracture accompanied by concussion and coma could produce lasting disability.
In summing up the effect of the testimony of this witness we point out that even the acceptance of his finding of evidence of a fracture disclosed by the x-ray films was not sufficient to justify an opinion in the mind of the witness himself as to the existence of total and permanent disability.
As we have above noted, Drs. Jones and Lobrano were the only expert witnesses tendered by plaintiff, although according to the testimony of plaintiff and his uncle, with whom he lived, plaintiff had been examined or treated by four other physicians. No explanation was given for the failure to tender the testimony of these doctors on trial of the case.
In support of their contention that plaintiff did not suffer total and permanent disability defendants relied upon the testimony of Dr. Faheam Cannon, an eminently qualified orthopedic surgeon, Dr. V. S. Gulley of the Marion Clinic, and Drs. R. W. Dicken-horst and David D. Salmon, expert radiologists.
The testimony of Dr. Gulley is convincing on the point that the history given by plaintiff and others of his lay witnesses that he was unconscious for a period of some four days following the accidental injury is completely false. Plaintiff, as we have above noted, was hospitalized in the Marion Clinic and Hospital, which was under the supervision of Dr. Gulley, and was seen, attended and treated by Dr. Gulley a number of times. The witness testified that plaintiff recovered consciousness within a space of some hours following his admission to the hospital shortly after the accident. This fact was further corroborated by plaintiff’s employer, who testified that plaintiff partially recovered consciousness within a period of two hours following the accident and that he was completely conscious and rational within a period of a few hours following that. There is no question as to the *259 correctness of the conclusion that plaintiff s period of partial or complete unconsciousness endured for only a matter of hours and was not followed by any evidence of coma.
We were particularly impressed by the testimony of Dr. Cannon, who not only made x-ray films of plaintiff’s skull but appears to be the only one of the expert witnesses who accorded plaintiff the benefit of a thorough medical examination in addition to taking the pictures. Dr. Cannon found no indications of disability at the time of his examination, which was made on April 7, 1953. In connection with his own x-ray films and an examination of the films made by Dr. Lobrano, this witness testified that the so-called fracture line found by Dr. Lobrano was duplicated on both sides of plaintiff’s skull and the witness very logically pointed out the fact that, if one of these lines should be interpreted as a fracture, the same interpretation should be made of the other. It was the positive opinion of this expert witness that none of the x-ray films justified the conclusion of the existence of evidence of a fracture and that, on the contrary, the lines depicted by the films marked the course of an impression made by a blood vessel. It was pointed out that the lines were perfectly smooth and regular, evidencing no indication of the broken or jagged irregularity which would have tended to indicate the line of a fracture.
The testimony of Drs. Dickenhorst and Salmon corroborated the x-ray findings of Dr. Cannon, and these experts were also positive in their conclusion that none of the x-ray films evidenced the existence of any fracture.
Learned counsel for plaintiff urgently argues that in cases of conflict in medical testimony the court should be guided in its conclusion by the testimony of the lay witnesses, which in this case, as in most others, was furnished principally by close relatives and intimate friends. We point out that this principle of dependence upon lay testimony serves as a guide only in those cases where the medical testimony is so evenly balanced and so violently conflicting as to prevent the drawing of a con-elusion. No such element exists in the instant case, and, in truth, we find surprisingly little conflict in the medical testimony as presented on behalf of plaintiff and defendants. There is not the slightest doubt as to the overwhelming preponderance in weight and value of the expert medical testimony in support of defendants’ contentions. Apparently the district judge was of the same mind. This case involves purely and solely the resolution of a question of fact. We not only find no error of fact in the judgment of the lower court, but we find abundant and conclusive support therefor in the record.
For the reasons assigned the judgment appealed from is affirmed.