GLADNEY, Judge.
The defendants, Argonaut Underwriters Insurance Company and Ed Jones, Jr., have appealed from a judgment increasing the weekly payment of workmen’s compensation from $15 to $26.33 to plaintiff, Jeff Sepulvado. Appellee has answered the appeal asking that the amount be fixed at $35 and to cast Ed Jones, Jr., solidarily liable for compensation along with his insurer.
In the trial court the sole defensive issue asserted was the amount of compensation to which Jeff Sepulvado was entitled. It involved a determination from conflicting evidence of the employee’s daily wage, and was presented to the judge a quo first in a plea of prematurity, and again on the trial of the case on its merits.
*179 Jeff Sepulvado was employed by James Glover to cut pulpwood for compensation for which he was paid at the rate of $3 per cord. While engaged in performing such work on October 19, 1956, he was injured by a falling tree which caused disabling injuries to his back. James Glover was a subcontractor for Ed Jones, Jr., who was insured by Argonaut Underwriters Insurance Company.
The burden of making satisfactory proof of the daily wage for the purpose of fixing weekly compensation payment rests with the plaintiff. Burks v. Central Surety & Insurance Company, La.App., 1942, 6 So.2d 45; Rutherford v. Frost Lumber Industries, Inc., La.App., 1952, 57 So.2d 914.
The term “wages” is defined in the Workmen’s Compensation Act, LSA-R.S. 23:1021(11) to mean the daily rate of pay at which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the injury. It is now well settled through repeated decisions of the Supreme Court of this state that the Workmen’s Compensation Act was intended to insure an employee against the loss or diminution of earning capacity and compensation benefits should be based upon the number of days the workman could have been employed had he not been injured. The test, therefore, which is now employed, is the ability of the employee to work. Rylander v. T. Smith & Son, Inc., 1933, 177 La. 716, 149 So. 434; Calhoon v. Meridian Lumber Company, 1934, 180 La. 343, 156 So. 412; Jarrell v. Travelers Insurance Company, 1950, 218 La. 531, 50 So.2d 22; Troquille v. Lacaze’s Estate, 1953, 222 La. 611, 63 So.2d 139; Caddo Contracting Company v. Johnson, 1953, 222 La. 796, 64 So.2d 177; Carrington v. Consolidated Underwriters, 1956, 230 La. 939, 89 So.2d 399. The effect of these decisions has been to recognize the six day week as a constant factor which must be used in calculating weekly compensation benefits. This rule must be applied regardless of the number of days the employee works for the particular employer by whom he is employed at the time of his injury.
In order to arrive at a basis of the employee’s daily rate of pay when some difficulty is experienced in ascertaining the employee’s daily wage, usually a conclusion is arrived at by a division of the total earnings over some representative period by the number of the days worked; but where the period worked is too short to afford a fair basis for computing earnings, in order to reach an equitable result, it may be necessary to use the representative daily wage paid a wage earner doing the same work. Louisiana Workmen’s Compensation Law and Practice, Malone, p. 443, notes 69 and 70 with reference to case authorities.
An employee paid on a per unit basis not infrequently encounters differences in his daily earnings. This can result from many factors which affect the amount of his output or production. Thus, in the case of an employee, such as plaintiff in this case, who worked in the woods assisted by a helper, and who used a power saw, his daily wage depended on the number of hours he worked, the condition of the timber, his or his helper’s skill in the use of a power tool, the ability to employ his available time, the number of hours per day he worked, the condition of his health, or other circumstances.
On October 8, 1956, Sepulvado, accompanied by his son, Arvin, began to cut pulpwood and received wages for working four days of the week commencing with October 8th, and for either three or four days of the following week. James Glover transported Jeff and Arvin Sepulvado to their place of work and kept account of the amount of cords cut by the father and son who worked as a team, alternating in the use of the saw and axe.
James Glover was a man of most limited education. He received the per cord measurements for each employee from a representative of the principal contractor and delivered these slips to his wife who record *180 ed the figures in a book which she kept and used as a basis for payments to Jeff Sepul-vado for a week’s work. Payments were usually made in cash.
Soon after the injury of Jeff Sepulvado was reported, Lawrence L. Watkins, an insurance investigator for Crawford & Company, sought to learn the correct daily wage of the injured employee, and consulted James and Mrs. Glover, from whom he obtained information as to wages or earnings which resulted in weekly compensation payments of $15.05, which were promptly made as was payment of all accrued medical expense. Some sixteen months following the accident suit was instituted by plaintiff alleging entitlement to weekly compensation of $35. On the trial of the plea of prematurity and on the merits of the case, James Glover testified to his opinion that Jeff and Arvin Sepulvado as a team could cut an average of about four and one-half cords per day if they would work a full day. This production would entitle them to $13.50 daily wages for their services.
Jeff Sepulvado stated he did not know how much he earned during his employment by James Glover. His testimony indicates that he was hopelessly confused as to dates and other pertinent information. Nor did any of the witnesses produced on his behalf afford the court any assistance in arriving at the actual daily wage earned by Jeff Sepulvado.
The most serious contentions of appellee before this court may be summarized as: (1) “The best and only evidence as to the amount of wood cut * * * is the testimony of Mr. James Glover, his boss, and Jeff Sepulvado”; (2) Forasmuch as Arvin Sepulvado was not an employee of Glover, but only a gratuitous assistant to his father, the total wages earned by the two constitute the earned wages of the appellee; (3) That Jeff Sepulvado testified where he worked over an eight hour day all week his wages wottld be approximately $90 per week; and (4) Testimony of Mrs. Glover and Watkins as to the entries in Mrs. Glover's book are conflicting and do not disclose accurately the daily earnings of appellee. Appellants assert the testimony of Mrs. Glover predicated on entries in a book kept by her, and which data Watkins used as a basis for weekly compensation payments that were accepted without complaint for sixteen months, shows the exact earnings of Jeff and Arvin Sepulvado, whose total earnings must be divided by two in order to find the earnings of the injured employee.
We are of the opinion two of ap-pellee’s contentions may be immediately rejected. The testimony of Jeff Sepulvado is of no assistance to the court. Secondly, we find, resting our conclusion upon the authorities hereinabove referred to, the ability of the employee to work which is an important factor in fixing his earnings, cannot include the labor of Arvin Sepul-vado. Appellee testified he did not know how much wood the team cut, and gave Arvin, who gratuitously worked with him, only a few dollars spending money each week. Arvin, a twenty-two year old able-bodied man, said he was just trying to assist his father while temporarily residing with him. Incidentally, during the week following his father’s injury, Arvin worked alone four days and during said period earned $18.93 by producing 6.31 cords of pulpwood.
The testimony of Mrs. Glover was that for the week commencing October 8th, during a period of four days, Jeff and Arvin Sepulvado produced a total of 10.59 cords of pulpwood, and for the following week over a four day period, the team produced 7.42 cords, representing earnings for the two weeks respectively of $31.77 and $22.26 for a total of $54.03 received by the two men for the period. The latter figure divided by eight gave a daily wage of $6.75, or weekly wages for the two of $40.50 ($6.75x6). Mrs. Glover also testified that for the week of October 15th, the Sepulvados cut one load each day on Mon *181 day, Tuesday, Wednesday and Thursday, a total of four loads which measured 7.42 cords. Watkins, who examined Mrs. Glover’s books, also found the production for that week was 7.42 cords, but he determined the days actually worked were only three, Monday, Tuesday and Friday. The discrepancy of one working day which appeared from the testimony of Watkins cannot be reconciled. It must be conceded, however, the variance was interpreted in favor of the employee, for Watkins used the total earnings of $54.03 and divided by seven rather than eight working days to arrive at the daily wage of the team, which he computed to be $7.72 and not $6.75 as it would be if the representative number of working days was eight.
The judge a quo for reasons not too apparent in the transcript, rejected the testimony of Mrs. Glover and Watkins, and accepted that of James Glover. The latter testified only to the effect he thought Jeff and Arvin Sepulvado capable of producing as a team about one and one-half loads of wood per day, the equivalent of four and one-half cords, or daily earnings of $13.50, totaling weekly earnings of each of the two men of $40.50, which sum if accepted as the correct factor, would entitle Jeff Sepulvado to compensation of $26.33, the amount reflected in the judgment.
The record furnishes the court no substantial basis for concurring in the decision of the judge a quo. After arriving at the daily production of one and one-half loads, it was then assumed each load equaled three cords, a non sequitur. The trial took place nearly two years following the working period under discussion. The testimony of Mrs. Glover, mho kept a record, and which was corroborated except as to one detail which was resolved to appellee’s advantage, is entitled to acceptance unless there is a clear reason for its rejection. For this reason, and further, in consequence of the fact appellee never questioned the wage payments made to him, and because of his acceptance of compensation checks for more than sixteen months without complaint, we are of the opinion the trial judge erred in rejecting Mrs. Glover’s testimony.
The judgment from which appealed is amended by reducing the amount of compensation to be paid weekly from Twenty-Six and 33/100 ($26.33) Dollars, to Fifteen and 05/100 ($15.05) Dollars, and is further amended to cast Ed Jones, Jr., solidarily liable to the appellee, together with Argonaut Underwriters Insurance Company, and as so amended, is affirmed at appellant’s cost.
HARDY, J., absent.