BOLIN, Judge.
Lonnie L. Chapman brought a suit in the district court of DeSoto Parish for total and permanent disability under the Workmen’s Compensation Law of Louisiana (LSA-R.S. 23:1021 et seq.) as the result of an accidental injury received while he was employed by the defendant. The hazardous employment and the accident were not contested, and the only issues that were in dispute during the trial in the lower court were the extent and duration of the disability and the compensation rate.
While there were some inconsistencies in the testimony below, it can generally be said that plaintiff was injured on January 22, 1959, while employed by the defendant sawmill company as a truck driver ;. that while in process of lifting some lumber he was struck by a “fork-lift” which knocked him to the ground and ran over his left foot and ankle; that he was immediately taken by his foreman to the Mansfield Clinic where he received treatment by Dr. Segura; that he was earning' $1.00 per hour at the time of his said accident, and that he was never paid any workmen’s compensation as a result of the accident.
This case was initially tried in the district court on April 6, 1959, before Judge Edwin M. Fraser. After the case had been tried and submitted, but before being decided, a motion to reopen same was filed on July 2, 1959. This motion was predicated on the showing that the employee had not responded to medical treatment, and that his condition had become more disabling since the completion of the original trial. Pursuant to the motion, the case was reopened and re-fixed for October 4, 1959. Prior to the hearing of the case under the last order, Judge Fraser died. It was, therefore, agreed and stipulated by all parties that the case would be set down for trial at a future-date before Judge William H. Ponder. On April 5, 1960, the case was finally tried and submitted before Judge Ponder. By agreement of all parties the entire proceedings- and testimony of the first trial was offered in evidence; and, after additional evidence was adduced, the case was submitted for decision. On July 19, 1960, for reasons-orally assigned, the plaintiff was awarded' a judgment for total and permanent disability at the rate of Thirty-One and 20/100-Dollars ($31.20) per week, together with Three Hundred Fifty One and 50/100 Dollars ($351.50) for medical expenses, together with a reservation of his right to assert a later claim for future medical expenses not to exceed Twenty Five Hundred and no/100 Dollars ($2500.00). The judg *411 ment also fixed the expert witness fees for the various physicians who testified during the trial. From this judgment, defendant has perfected a devolutive appeal to this court.
As previously stated, the defendant does not contest the accident nor the fact that the plaintiff was injured within the scope of his hazardous employment with the defendant. As we appreciate the defendant’s contentions, they may be set forth as follows :
1. The employer contends that the plaintiff has not suffered any disabling •or compensable injury.
2. That if such a disabling injury was suffered, the plaintiff had fully recovered from same by not later than September 15, 1959.
3. That if the first two contentions above are found to be without merit, the plaintiff is entitled to recover for only partial disability.
4. That, in the event of disability, compensation payments should be based on a forty (40) hour week.
This case on appeal presents to us purely factual issues, all of which are related to the degree and extent of the plaintiff’s injuries. The record convinces us that the plaintiff suffered a severe injury as a result of having been struck by the “fork-lift.” It is true, as contended by the appellant, that when he first reported to Dr. Segura at the Mansfield Clinic he complained principally of his left ankle and foot. It was several days later before he made any complaint as to any injury to his right knee, and the injury to the right knee was the one which was ultimately the basis for the award of compensation. However, it is logical to see why the plaintiff would first be directing his major complaint to his left leg rather than his right, because, as previously pointed out, it was this leg which received the most painful injury.
Following the initial examination and treatment by Dr. Segura, the plaintiff was examined and/or treated by the following physicians: Dr. E. C. Simonton, orthopedist of Shreveport, Louisiana, Dr. T. M. Oxford, orthopedist of Shreveport, Dr. Harold Bicknell, orthopedist of Shreveport, Dr. Carson R. Reed, orthopedist of Shreveport, and Dr. O. L. Sanders, general practitioner, Converse, Louisiana.
The testimony of the doctors is set forth in the voluminous record before this court and shows that four separate depositions were taken by Dr. Simonton and two such depositions by Dr. Sanders and Dr. Oxford.
Without giving a detailed analysis of the testimony of each of the above doctors, it can generally be said that the consensus of all medical testimony at the time of the original trial, on April 6, 1959, was that the plaintiff had suffered a “sprain of the medial collateral ligament of the right knee”; that he was unable to return to his usual occupation of truck driver on the date of the trial, but, that such disability should completely disappear within a reasonable length of time.
After the case was reopened and additional evidence was submitted, it can be generally said that a majority of the medical experts were of the opinion that the plaintiff had suffered a “rupture of the medial semi-lunar cartilage of the right knee”; that as a result of such a condition he could not return to his usual occupation of a truck driver; and that such condition would probably be permanent.
Therefore, the principal question to be decided is whether or not the plaintiff has shown that the torn cartilage condition of the plaintiff’s right knee was caused by the original accident, or whether or not same was caused by a re-injury. There is no evidence in the record that the plaintiff suffered any other accident than the one made the basis of the suit. In fact, all of the evidence is to the contrary, and we are convinced that his present disabling condi *412 tion was directly caused by the accident. A reading of all of the medical testimony leads us to the conclusion that when the plaintiff did not recover from the original diagnosis of a mere sprain of his ligaments the medical examinations became more intense which resulted in the true diagnosis of a torn cartilage.
It is, therefore, our opinion that the medical and lay testimony justified the trial court’s judgment that the employee had suffered a rupture of the medial semilunar cartilage; that he had’not .recovered from such injury at the time of the trial; and that such disability was total and permanent under our workmen’s compensation law.
Passing now to the question of whether the disability suffered herein should be classified as total and permanent, the appellant contends that such disability is only temporary in nature, and recovery, therefore, should not be allowed under the total and permanent section of the compensation law, and cites, as authority therefor, the following cases: Mancil v. J. B. Beaird Corp., La.App. 2d Cir., 1942, 7 So.2d 385; Reed v. Zurich General Accident and Liability Insurance Company, La.App. 2d Cir., 1951, 51 So.2d 840.
An examination of the above cases shows that the medical experts were of the opinion, in each of them, that the disability to the employee was only temporary, and that he should be able to return to his employment within a very short time. The evidence in the instant case is to the contrary, and the consensus of same is that this employee will probably never be able to return to the same type of employment that he was doing at the time of the accident without a great deal of pain and suffering. Under these circumstances, he is entitled to judgment for total and permanent disability. Knispel v. Gulf State Utilities Company, 1932, 174 La. 401, 141 So. 9; Brannon v. Zurich General Accident and Liability Insurance Company, 1953, 224 La. 161, 69 So.2d 1.
The question is also raised henein as to the correct compensation rate applicable to the facts of this case. The record shows that the plaintiff was employed on a pay rate of One and no/100 ($1.00) Dollar per hour, and that he worked eight hours per day. There was no definite understanding as to the number of days per week that he would work. Under these circumstances the compensation rate must be based upon a six-day week, or a total' weekly earning of Forty-Eight and no/1001 ($48.00) Dollars, sixty-five percent (65%)' of which is Thirty-One and 20/100 ($31.20) Dollars per week. Carrington v. Consolidated Underwriters, 1956, 230 La. 939, 89 So.2d 399, rehearing denied.
It is, therefore, our opinion that the judgment of the trial court is correct, and it is accordingly affirmed at the appellant’s cost.
Affirmed.