HERGET, Judge.
The Plaintiff instituted this suit on behalf of his minor son, Joseph E. Stewart, for workmen’s compensation as the result of an accident which occurred on September 15, 1959. Claimant, Joseph E. Stewart, was injured when a pile driver hammer dropped on his right arm causing minor contusions on his forearm and a comminuted fracture of the right thumb. Although suit was originally filed against A. P. Johnston individually, by an amended petition A. P. Johnston Contractor, Inc. and Liberty Mutual Insurance Company were made parties Defendants. There is no dispute as to the happening of the accident and the sole issues for resolution on the appeal taken by Plaintiff from the judgment of the Trial Court is a determination of the weekly amount of compensation to which the Claimant is entitled; whether or not as a result of such accident the Claimant suffered a total and permanent disability within the meaning of the Workmen’s Compensation Act, and the question of assessment of penalties and attorney fees.
From an examination of the record it is apparent the Claimant resorted to every artifice he could to impress the Trial Court. *13 However, in his written opinion the Trial Court, in our opinion, correctly evaluated all of the issues presented by Claimant and resolved same correctly with the exception of fixing the rate of compensation we believe Claimant is entitled to, which we will discuss hereafter.
In his opinion, which we believe to be well considered in disposing of the issues presented, Judge Lindsey said:
“This is a workmen’s compensation suit brought by plaintiff for and on behalf of his minor son. Hereinafter the son will be referred to as the plaintiff. Compensation was paid to plaintiff for the period beginning September 15, 1959, the date of his injury, and ending November 17, 1959, at the rate of $33.-80 per week.
* * * * * *
“The serious dispute is as to the duration of plaintiff’s disability. Defendant contends his disability had ceased as of November 17, 1959. Plaintiff contends he is totally and permanently disabled as a result of the injury. He seeks judgment accordingly, together with statutory penalties and attorney’s fees.
"Plaintiff was injured while cleaning mud off the under side of a pile driver hammer, the hammer dropping and crushing his right arm into the mud. Shortly thereafter he was seen by Dr. R. M. Coco of Baton Rouge. Dr. Coco testified plaintiff suffered numerous scratches and minor contusions of his forearm and a fairly severe contusion of his hand. He cleaned and dressed the injured areas. Since x-rays showed a fracture of the thumb, Dr. Coco referred the case to an orthopedic surgeon. Dr. Coco mistakenly testified there was a fracture at the base of the index finger. Shortly thereafter on the date of the injury plaintiff was seen by Dr. Richard B. Means, an orthopedic surgeon in Baton Rouge. Dr. Means placed the injured hand and the forearm in a short cast, with a pin through the end of the thumb to which rubber band traction was attached, the fractured thumb being thereby completely immobilized. This was on September 15, 1959. He saw plaintiff thereafter on September 25, October 8, November 17, and December 31, 1959. The pin and cast were removed on October 8. On November 17 Dr. Means was of the opinion plaintiff had satisfactorily recovered from his injuries, although there was some minor residual tenderness in the injured thumb, slight atrophy of the forearm, and slight limitation of motion in the thumb, the slight atrophy and limitation of motion being due to lack of use of the members. He was of the opinion plaintiff was then able to resume his usual activities, and instructed him to do so.
“Plaintiff returned to Dr. Means on December 31, 1959 complaining of pain in his thumb. Pie testified his thumb was then infected at the point where the pin had been inserted. Dr. Means testified he found no infection, and he reaffirmed his findings of November 17.
“Thereafter, on January 11, January 18, and February 8, 1960, plaintiff was seen by Dr. I. I. Rosen of Amite. Dr. Rosen testified his office records show that plaintiff called at his office on December 18, 1959, the doctor then being away on vacation. Dr. Rosen’s written report, dated February 3, 1960, and covering his examination of plaintiff on January 11, 1960, is in evidence. The doctor’s testimony made no particular references to the examinations of January 18 and February 8. At Dr. Ro-sen’s first examination plaintiff complained of pain in his lower back. According to the testimony of both plaintiff and Dr. Means, plaintiff at no time complained to Dr. Means of back trouble. Dr. Rosen testified he found moderate muscle spasm in plaintiff’s lower back, with a resulting pelvic tilt. He was of the opinion this difficulty would *14 clear up with conservative treatment. He attached relatively little importance to plaintiff’s back complaints as compared to the injured hand. He found paleness and subnormal temperature in plaintiff’s injured hand, with 60% loss of strength on gripping. While he was of the opinion plaintiff was disabled to do his usual work, he recommended gradually increased use of the injured hand to stimulate circulation. On the day of the trial he observed no paleness in plaintiff’s injured hand, but reaffirmed his findings as to subnormal temperature. He ventured no definite prognosis as to the complete recovery of plaintiff’s hand injury.
“It is to be noted in Dr. Rosen’s written report that he had no knowledge of plaintiff’s fractured thumb. He understood the injured hand was in a cast for five weeks. It was actually about three weeks. Since he understood the hand remained in a cast for five weeks, although there was no fracture, it is my opinion he assumed a much more severe injury to the hand generally than actually occurred, and that some of his testimony was based on this erroneous assumption. Unfortunately,. he was not questioned in this connection.
“It is also noted that Dr. Rosen found no atrophy of plaintiff’s hand and forearm. He gave it as his opinion that atrophy might develop later.
“On the day of the trial Dr. Means examined plaintiff’s injured hand in court. His findings were substantially tire same as on November 17 and December 31, 1959. In his opinion the remaining slight atrophy of the forearm and limitation of'motion of the thumb will disappear shortly with increased use of these members. He pronounced plaintiff otherwise fully recovered from his injuries. This examination in court revealed a small fleshy, wart-like protuberance over "the outside upper rim of the nail on the injured thumb at the point where the pin was inserted. It is not readily noticeable and certainly not disabling.
“Plaintiff is what is generally known as a common laborer. He professes no particular skill or training. He says he is presently disabled to do the same type of work he was doing at the time of his injury. Based on plaintiff’s complaints, that is likewise the opinion of his father, mother, sister, brother-in-law, and two neighbors.
“A striking feature of this case is the evasive and shifting testimony of plaintiff, and to somewhat lesser extent that of his father and sister, particularly with reference to plaintiff’s complaints of a back injury. He testified his back trouble appeared within about two weeks following his injury. He first testified he saw Dr. Rosen about two weeks after the injury. When pressed on cross examination as to the approximate dates of his visits to Dr. Rosen, he obviously misstated the true facts. Since his first visit to Dr. Rosen was made exactly one month prior to the date of the trial, with two visits thereafter, both he and his father should have experienced no difficulty in giving the approximate dates of these visits. Plaintiff’s effort to lead the court to believe these visits commenced more than three months earlier and were prompted by back trouble, together with the evasiveness and vagueness which characterized his testimony generally, casts grave doubts on his credibility.
“I am aware of the rule that where there is a sharp conflict in the medical testimony, lay testimony may be heard to resolve it.
“To begin with, there is no sharp conflict in the medical testimony. Dr. Rosen knew nothing of the fracture. (See his report) He evidently assumed there had been a crushing injury to the *15 entire hand. He based his opinion of disability in the hand on three findings: paleness, decreased temperature, and loss of strength in gripping. He admitted in court, and it was evident to any onlooker, that there was no paleness on the day of the trial. He reaffirmed his finding of inequality in temperature as between the two hands. This was flatly contradicted by Dr. Means following his examination of plaintiff in court. Several minutes before counsel for defendant requested this examination he requested plaintiff to keep both his hands on the counsel table, and plaintiff complied with the request. It strikes the court that a person might very easily produce inequality of temperature in his hands, and that a demonstration of gripping strength is a matter largely within the person’s control.
“If plaintiff had any back trouble when he was first examined by Dr. Rosen, or if he has any now, I find no evidence connecting it with plaintiff’s injury of September 15, 1959.
“A consideration of all the evidence in the case convinces me that the evidence of plaintiff’s present disability comes from himself alone. For the reasons already given I attach little weight to his testimony. His counsel protests that the court is penalizing plaintiff because he is relatively illiterate, young in years, and not highly intelligent; that a little confusion in dates is understandable. I leave the record to speak for itself.
“Considering the evidence, it is my opinion plaintiff has failed to show he was disabled beyond November 17, 1959, and for these reasons there is judgment rejecting his demands.
“The expert witness fees of Dr. R. M. Coco and Dr. Richard B. Means are fixed at $50 each; the expert witness fee of Dr. I. I. Rosen is fixed at $75; and these witness fees are taxed as costs.
“Judgment will be signed accordingly. ***".
As heretofore shown, compensation was paid to Claimant for the period beginning September 15, 1959, the date of his injury, and ending November 17, 1959 at the rate of $33.80 per week.
The Workmen’s Compensation Act provides compensation at the rate of 65% of the hourly wage based on weekly earnings of the workman not to exceed the maximum provided in the act of $35 per week. Using the figure of $1,40 per hour as testified to by Claimant as his hourly wage or $1.30 per hour as testified to by the foreman of the Defendant as the hourly wage of Claimant, we are of the opinion the formula to be used in arriving at the amount of compensation due Claimant for the period of disability, September 15, 1959 to November 17, 1959, is 65% of his hourly rate of pay figured on a basis of eight hours per day, six days a week, in the absence, as in this case, of evidence restricting Claimant to a five day week. Using this as a basis for Claimant’s contention of his earnings, the figure arrived at is $43.68; whereas, using Defendant’s contention of his hourly wage, by the same formula the figure arrived at is $40.56. In either event 65% of Claimant’s hourly weekly wage exceeds the maximum rate the act allows of $35 per week to which we believe the Claimant is entitled. Jarrell v. Travelers Ins. Co., 218 La. 531, 50 So.2d 22; Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399; Varnell v. Roy O. Martin Lumber Co., Inc., La.App., 113 So.2d 83; Hoffman v. City of New Orleans, La.App., 121 So.2d 12.
Accordingly, the judgment from which Plaintiff appealed will be amended by awarding judgment to Appellant for and on behalf of his minor son, Joseph E. Stewart, workmen’s compensation against A. P. Johnston, A. P. Johnston Contractor, Inc. and Liberty Mutual Insurance Company, in solido, for a period beginning September 15, 1959 and ending November 17, 1959 at the *16 rate of $35 per week subject to a credit of the weekly compensation of $33.80 paid during this period, with 5% interest from maturity on each weekly increased rate of payment from its due date until paid. The costs, including the cost of appeal, are to be paid by Defendants. Otherwise the judgment of the Trial Court is affirmed.
Judgment amended and as amended affirmed and rendered.