134 So.2d 707 (1961)
Dudley SHUFF, Plaintiff and Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Defendant and Appellee.
No. 339.
Court of Appeal of Louisiana, Third Circuit.
November 6, 1961.
Rehearing Denied November 29, 1961.
Certiorari Denied January 15, 1962.
*709 Jacque B. Pucheu, Eunice, for plaintiff-appellant.
Davidson, Meaux, Onebane & Donohoe, by James E. Diaz, Lafayette, for defendant-appellee.
Before FRUGÉ, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a suit for workmen's compensation. Plaintiff, a 24 year old white man, while engaged in his employment as a common laborer for Hub City Contractors, Inc., suffered an injury to his back while using an ax to nail heavy timbers in a "board road" on February 20, 1960.
After trial on the merits, the lower court awarded plaintiff compensation at the rate of $35 per week from February 22, 1960 through January 12, 1961, subject to a credit for all compensation paid by defendant. The trial judge also awarded plaintiff judgment for an additional 12% as penalties, and attorney's fees in the sum of $150.
From said judgment plaintiff has appealed, contending that the trial court erred in finding claimant was able to return to work as of January 12, 1961 and seeking amendment of said judgment so as to extend the period of compensation to a full 400 weeks as for total and permanent disability. Plaintiff also seeks an increase in the award of $150 as attorney's fees. Defendant has answered the appeal contending that plaintiff's disabilities ceased on November 17, 1960, that the correct compensation rate is $31.20 rather than $35 per week and that the trial court erred in awarding penalties and attorney's fees.
The first issue for consideration is the extent and duration of plaintiff's disability. As stated above, plaintiff suffered an injury to his back while using an ax to nail the heavy timbers in a board road on February 20, 1960. Although no one else witnessed the accident, the plaintiff was found lying on the ground and stated that he had injured his back. He was sent on that same day to Dr. S. J. Manuel, a general practitioner of Eunice, Louisiana, who prescribed medication for pain and sent plaintiff home with instructions to return on the following Monday, February 22, for further examination. Following this second examination on February 22, Dr. Manuel placed petitioner in the hospital where he remained from February 22 through February 27, 1960. Dr. Manuel's diagnosis at the time was lumbo-sacral sprain and treatment in the hospital consisted of traction, muscle relaxants and pills for pain.
Plaintiff was against hospitalized by Dr. Manuel from March 9, through March 12, 1960, under the same diagnosis and the same treatment. Then Dr. Manuel referred the claimant to Dr. George P. Schneider, a highly qualified orthopedic specialist, who examined the plaintiff on March 28, 1960. Dr. Schneider found no muscle spasm or any other objective symptoms which he considered significant, but based on the history and the subjective symptoms, Dr. Schneider also diagnosed a lumbo-sacral sprain at L4 or L5 and, in view of the relief which plaintiff had obtained from traction during his two previous periods in the hospital, recommended that plaintiff be hospitalized for two weeks with the same treatment and that following this he wear a brace. On this occasion Dr. Schneider's prognosis was that the plaintiff *710 should recover completely from his lumbo-sacral sprain within three or four months after the doctor's examination of March 28, 1960. In the course of his examination Dr. Schneider took x-rays, which revealed the presence of a "sacralization of the right fifth lumbar transverse process with a pseudo arthrosis between the right fifth lumbar transverse process and the sacrum and ilium.", which condition is also called a "false joint". Dr. Schneider did not express an opinion that this congenital defect in plaintiff's back was related to the accident or caused any of the pain or other symptoms of which plaintiff complained, but he did express the opinion that such a false joint might prolong recovery from a lumbo-sacral sprain.
Following Dr. Schneider's recommendations, Dr. Manuel again hospitalized the plaintiff from April 11 through April 15, 1960, and in his subsequent examinations Dr. Manuel continued to find what he diagnosed as muscle spasm. (It perhaps should be noted at this point that none of the other expert witnesses, all of whom were specialists in orthopedics, ever found any muscle spasm, and Dr. Schneider, in his testimony, stated that he found a "slight left lateral lumbar scoliosis which gave rise to a little prominence of the right erector spinae muscle mass, which could be easily misconstrued as spasm * * *.") Therefore, Dr. Manuel sent the plaintiff back to Dr. Schneider who re-examined him on July 18, 1960 and found that plaintiff was definitely improved. Dr. Schneider again found no objective symptoms but changed his prognosis of recovery to three or four months from his examination of July 8, 1960.
Plaintiff was again seen by Dr. Schneider on September 26, 1960, and again it was Dr. Schneider's opinion that plaintiff had improved and he gave a prognosis of two or three months further disability although he stated that the plaintiff could recover spontaneously at any time within that period. Dr. Schneider did not see plaintiff again after September 26, 1960, but he did express the opinion that as of that date plaintiff was disabled from performing manual labor.
Dr. Manuel continued to find what he diagnosed as muscle spasm so in order to obtain another opinion from an orthopedic specialist he referred the claimant to Dr. William Louis Meuleman. Dr. Meuleman examined plaintiff on November 17, 1960, and on December 5, 1960, and diagnosed that plaintiff had suffered a lumbo-sacral sprain from which he had recovered and that he was able to return to heavy manual labor. From the x-rays, Dr. Meuleman also diagnosed the "false joint" but, unlike Dr. Schneider, expressed the opinion that the lumbosacral sprain was an aggravation of this congenital weakness in the plaintiff's back. However, in view of Dr. Meuleman's final conclusion that the plaintiff had completely recovered as of the dates of his examinations on November 17 and December 5, 1960, this slight variance between the opinions of Dr. Schneider and Dr. Meuleman is not significant.
On receipt of Dr. Meuleman's report that plaintiff was able to return to work and in view of the conflicting opinion of Dr. Manuel that the plaintiff was not able to return to work, the defendant invoked the procedure set out in LSA-R.S. 23:1123 and requested the court to appoint an independent physician to examine the claimant. The court appointed Dr. James Gilly, a highly qualified orthopedic surgeon, who first examined the plaintiff on January 4, 1961. Dr. Gilly, like Dr. Meuleman, diagnosed that the plaintiff had suffered a lumbo-sacral sprain from which he had recovered and that plaintiff was able to return to heavy manual labor. Due to the fact that plaintiff was intoxicated during his examination by Dr. Gilly on January 4, 1961, which condition might have affected any symptoms of injury on that occasion, Dr. Gilly re-examined the plaintiff on January 12, 1961, but his diagnosis was the same.
The lay testimony as to disability consisted of the plaintiff, who testified that he *711 continued, through the date of trial, to have pain in his back and that although he had tried to work and to exercise he could not do so; plaintiff's wife to whom he was married four months before the date of the trial testified that plaintiff could not work, that he had tried to move a sofa and an icebox in their home, but couldn't and that he still had to take medication for pain; plaintiff's brother-in-law, Theo Jagneaux, with whom plaintiff lived until his marriage about four months before the trial, testified that plaintiff could not work and that on one occasion he tried to "cut the grass" and the next day he couldn't move.
From the above summary of the expert medical testimony it can be seen that the opinions of the three orthopedic specialists, Dr. Schneider, Dr. Meuleman and Dr. Gilly, are substantially in agreement and complementary one to the other. It is true that on the date of his last examination on September 26, 1960, Dr. Schneider found plaintiff unable to return to heavy labor, but on that occasion Dr. Schneider predicted that the plaintiff would recover within two or three months or that he might recover spontaneously within that period. Plaintiff was subsequently examined by Dr. Meuleman on November 17 and December 5, 1960, and by the court appointed physician, Dr. Gilly, on January 4, and January 12, 1961, and these two orthopedic specialists found on all four of these examinations that the claimant had recovered and was able to return to his former type of work.
Of the expert medical witnesses, only Dr. Manuel, disagrees as to plaintiff's condition as of the date of the trial on January 13, 1961, he being of the opinion that the plaintiff continued to have muscle spasm and residual disability from the accident of February 20, 1960.
Applicable here is the well established jurisprudence that the opinion of a general physician is not accorded as much weight as that of an orthopedist as to matters which fall within the special field of orthopedics. Faircloth v. Speights, La. App., 106 So.2d 522; Scott v. Roy O. Martin Lumber Co., La.App., 116 So.2d 726; Varnell v. Roy O. Martin Lumber Co., La. App., 113 So.2d 83. Under this rule of evidence, as well as the fact that in the instant case, the opinions of Drs. Schneider, Meuleman and Gilly are substantially in agreement and only the opinion of Dr. Manuel is in conflict, it is clear that the great preponderance of the expert medical testimony is that plaintiff had recovered and was able to return to his former type of employment at least as of the date of Dr. Gilly's examination.
Plaintiff's argument that we must give serious consideration to the lay testimony in view of the conflict in the medical testimony is answered by our finding above that the medical testimony is not so conflicting or so evenly balanced as to justify a dependence upon lay testimony. McElroy v. Kennedy, La.App., 84 So.2d 256; McAllister v. Liberty Mutual Insurance Co., La.App., 87 So.2d 354; Davis v. Clyburn, La.App., 109 So.2d 126. Furthermore, in the instant case the lay testimony is not impressive.
During the trial, plaintiff's counsel objected to evidence that plaintiff was convicted of theft in 1954 and forgery in about 1956. It is our opinion that even if this evidence was improperly admitted and considered by the trial judge, it would not change our finding under the evidence that plaintiff's disability ceased as of January 12, 1961.
Turning now to the issue of the compensation rate, we find that following the accident of February 20, 1960, the plaintiff was paid weekly compensation benefits in the sum of $27.43 and that following plaintiff's demand and defendant's refusal to increase the compensation rate to $35 per week, the instant suit was filed on May 2, 1960. During the pendency of these proceedings the rate was increased to $31.20 on August 25, 1960, which amount was being paid as of the date of trial in the lower court. It is the contention of the defendant *712 that the plaintiff was not regularly employed by Hub City Contractors, Inc.; that he and the other employees would go to the Hub City yard each morning to determine if work was available, and if so, they were employed to work for $1 per hour; that since plaintiff was paid overtime at the rate of $1.50 per hour for all time over 40 hours per week, the basic work week was considered to be 40 hours; that a review of the 16 weeks' period immediately preceding the accident shows that including overtime, the plaintiff earned an average of $42 per week, which defendant used as a basis for computing the compensation rate of $31.20 per week.
The evidence is clear that the plaintiff started work for Hub City Contractors, Inc. in November of 1960 as a roustabout or common laborer and that he regularly and customarily worked 10 hours per day, except on those occasions which they had to stop work because of rain or because the job was finished before the end of the 10 hour work day. Under these facts, it is clear that the plaintiff's usual and customary daily wage at the time of his injury was $10. Following the formula set forth by our Supreme Court in Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399, the daily wage, once determined, must be multiplied by 6 (a 6 day week) in order to calculate the average weekly wage. In the instant case the daily wage is $10, which multiplied by 6 gives a weekly wage of $60 of which 65% is the sum of $39, (which is in excess of the maximum rate of $35 per week allowed by the Workmen's Compensation Act). See Gill v. Hillyer, Deutsch, Edwards, Inc., La.App., 132 So. 2d 549 (3rd Cir.App.1961) and the cases cited therein.
The final issue on appeal is whether plaintiff is entitled to penalties and attorney's fees. Defendant contends that even though it failed to pay the correct compensation rate of $35 per week, its actions were not arbitrary, capricious or without probable cause. Defendant argues that, viewing the evidence as a whole, it has treated the plaintiff in a fair and equitable manner as is shown particularly by its payment of $31.20 even after Dr. Meuleman reported plaintiff was recovered as of November 17, 1960, and its continuance of these payments up until January 12, 1961 as of which date the lower court determined that plaintiff was fully recovered from his injuries. Defendant points out that it was advised by Hub City Contractors, Inc. that the average weekly earnings of plaintiff were $42, without specifying the number of hours per day or the number of days per week worked, and that based on this information the weekly compensation rate was calculated.
The evidence shows that immediately after the accident on February 20, 1960, the defendant started paying compensation at the rate of $27.43 per week. On March 2, 1960, plaintiff's attorney wrote to the defendant demanding payments of $35. On March 15, 1960, plaintiff's attorney again wrote to the defendant stating specifically that plaintiff "worked 10 hours a day and according to the Supreme Court ruling, at $1 an hour, this would amount to $10 per day, for 6 days a week, thus entitling my client to the sum of $35 per week." Despite this demand, the payments were not increased and suit was filed on May 2, 1960. During pendency of the suit the defendant increased the compensation rate to $31.20 on August 25, 1960, and in addition paid a sufficient amount to make up the difference between the payments of $27.43 and the new rate of $31.20 on all those payments which had been made before August 25, 1960.
In our opinion the applicable law is set forth in the case of Darby v. Johnson, La. App., 118 So.2d 707, 711 (First Cir.App. 1960) in which the court held as follows:
"Even assuming that the employer resisted payment of compensation at the correct rate upon advice of counsel received subsequent to suit, we do not think that such circumstances could exempt from penalty an employer's refusal *713 to tender his undoubted compensation liability when there is no legal basis whatsoever to support such refusal. The cases upon which able counsel for defendant relies (Moore v. Great American Indemnity Company, La.App. 2 Cir., 106 So.2d 771, and Flanagan v. Welch, La.App.Orl., 93 So.2d 36), insofar as not distinguishable from the present situation, we regard to be against the weight of the better authority, which holds that a failure to pay or to tender an amount for which the employer is undoubtedly liable under the compensation act is arbitrary or unreasonable so as to require the imposition of statutory penalties whenever such failure is without legal basis and there is no serious question upon the merits that the disabled employee is entitled to payment of such compensation benefits. Humphreys v. Marquette Cas. Co., 235 La. 355, 103 So.2d 895; Fruge v. Pacific Employers Ins. Co., 226 La. 530, 76 So.2d 719; Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695; Hale v. Republic Drilling Co., La.App. 1 Cir., 109 So.2d 268; Cain v. Employers Cas. Co., La.App. 2 Cir., 96 So.2d 527, affirmed, 236 La. 1085, 110 So.2d 108; Patterson v. Cargo Services, Inc., La.App.Orl., 95 So.2d 49."
In the instant case the facts show clearly that the plaintiff worked 10 hours per day except on those days when further work was prevented by the weather or by completion of the job. Following the formula established by our Supreme Court in Carrington v. Consolidated Underwriters, supra, decided in 1956, it is clear that the compensation rate in the instant case should have been computed on the basis of the plaintiff's daily wage of $10 for a 6 day week which would give an average weekly wage of $60, not even counting time and a half for overtime, which the evidence shows plaintiff received. Defendant's failure to pay the correct compensation rate was without any legal basis whatsoever on any issue of law or of fact, and we therefore hold that its actions were arbitrary, capricious and without reasonable cause so as to require the imposition of statutory penalties and attorney's fees.
Plaintiff's attorney argues strenuously that the trial court's award of $150 as attorney's fees is inadequate. Plaintiff argues that the provisions of LSA-R.S. 22:658 providing for penalties and attorney's fees are penal in nature, the purpose thereof being to penalize an insurer who arbitrarily fails to pay benefits to which a claimant is entitled, and that therefore the amount of the claim is not a factor to be considered in determining the amount of the attorney's fees. While counsel is correct in his contention that these statutory provisions are penal in nature (see Brown v. Continental Cas. Co., 161 La. 229, 108 So. 464, 45 A.L.R. 1521 and the authorities cited therein) it is likewise well settled in our jurisprudence interpreting LSA-R.S. 22:658 (as well as LSA-R.S. 23:1141 providing for similar penalties and attorney's fees against an employer) that the amount of attorney's fees awarded depends upon the amount of the claim involved and the legal services rendered. Federico Macaroni Mfg. Co. v. Great Western Fire Ins. Co., 173 La. 905, 139 So. 1, 79 A.L.R. 1256; Nomey v. Pacific Mutual Life Ins. Co., 212 La. 820, 33 So.2d 531, 1 A.L.R.2d 946; 29A Am.Jur. 779. The only amount which the defendant insurer in the instant case arbitrarily refused to pay was $276.62 ($7.57 per week for the 26 weeks from February 21 to August 20, 1960 and $3.80 per week for the 21 weeks from August 20 to January 12, 1961). As the record shows the most seriously contested issue in this case was the extent and duration of plaintiff's disability and in connection with this issue plaintiff's attorney performed considerable legal services in pleading his case and in preparing and presenting the expert and lay testimony on the question of disability. However, on this issue the plaintiff was unsuccessful, both in the lower court and in this court. At no time does it appear that *714 the defendant arbitrarily took the position that plaintiff was not totally disabled, the record being clear that defendant paid compensation benefits through January 12, 1961, as of which date both the lower court and this court have found that plaintiff was able to return to work. The only issue on which the defendant acted arbitrarily was the rate of compensation. Of the issues in the case, this was not the most important, nor the largest in amount, nor the most demanding of counsel's skill, time and energy. It is therefore our opinion that the lower court's award of $150 for attorney's fees is neither inadequate nor excessive. In Darby v. Johnson, supra, the court awarded $75 as attorney's fees under a very similar set of facts where it found an arbitrary refusal to pay a total of $272.75. In all of the cases cited by plaintiff, where a larger amount was awarded as attorney's fees, it appears that the amount of the claim successfully prosecuted by the claimant's attorney was considerably larger than in the instant case.
For the reasons hereinabove set forth the judgment appealed from is affirmed. All costs of this appeal are assessed against the plaintiff-appellant.
Affirmed.
FRUGÉ, Judge (dissents and assigns the following reasons).
I respectfully dissent to that portion of the majority opinion which awards $150 attorney's fees, being in my opinion totally inadequate.
In June, 1956 our Supreme Court in the case of Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399-404, stated in Per Curiam on rehearing:
"Counsel for the defendant has requested that we clarify our interpretation of LSA-R.S. 23:1021(11) by granting a rehearing, or, in the alternative, by issuing a per curiam in this case. Although we thought we had made ourselves clear, we shall nevertheless explain the extent of our decree.
"LSA-R.S. 23:1021(11) has been a source of repeated confusion. In the case of Rylander v. T. Smith & Son, Inc., 177 La. 716, 149 So. 434, we stated that one of the purposes of the Workmen's Compensation Statute was to insure the employee against the loss or diminution of earning capacity. We held that compensation should be based upon the number of days the workman could have secured employment had he not been injured. The test employed was ability to work. In Calhoon v. Meridian Lumber Co., 180 La. 343, 156 So. 412, we said that economic conditions, which compelled an employee to work half time, would not prevent his recovery of workmen's compensation on the basis of a six day week. In Jarrel v. Travelers Ins. Co., 218 La. 531, 50 So.2d 22, we attempted to straighten out apparent difficulties and clarify our former decisions. We held that an injury had the effect of depriving a workman of his ability to work at full time employment in the future, and that he should be compensated on a six day work week. The ability to work test was again employed in Troquille v. Lacaze's Estate, 222 La. 611, 63 So.2d 139.
"The use of the word `customarily' in Caddo Contracting Co. v. Johnson, 222 La. 796, 64 So.2d 177, was not intended to mean that an employee's weekly wages would be computed upon the number of days he actually or customarily worked for the particular employer, by whom he was employed at the time of the injury. We were referring to the fact that the average able-bodied employee customarily worked six days a week.
"[7] After determining an employee's daily wage, the six day week is to be employed in calculating his weekly wage. If he is injured, he is *715 deprived of this ability to work six days per week, and remuneration is awarded him for this deprivation. This test must be applied regardless of the number of days he works for the particular employer, by whom he is employed at the time of his injury."
In May, 1957 the First Circuit Court of Appeal recognized the 6 day week rule in Guillory v. Coal Operators, La.App., 95 So.2d 201, at 205, in the following language (approvingly re-affirming the Carrington case supra):
"* * * It is firmly established that the purpose of the compensation act is to insure the employee against the loss of earning capacity, and that therefore the rate of weekly compensation should be based upon the rate of weekly earnings, based upon the employee being paid an hourly wage for a 48-hour week, i. e., six days per week, 8 hours per day. Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399, Troquille v. Lacaze's Estate, 222 La. 611, 63 So.2d 139, Jarrel v. Travelers Ins. Co., 218 La. 531, 50 So.2d 22, 23. In the latter case, the Supreme Court very forcefully stated that the award of compensation should be based, not on the actual wage, but on `the person's ability to work at full time employment in the future'."
This 6 day rule was re-affirmed among others in the following reported cases:
June, 1957, Davis v. Reynolds, La.App., 96 So.2d 368, at 373;
June, 1957, White Calcasieu Paper Co., La.App., 96 So.2d 621, at 625;
Dec., 1957, Miller v. U. S. F. & G. Co., La.App., 99 So.2d 511, 521;
Nov., 1958, Neldare v. Schuylkill, La. App., 107 So.2d 487;
April, 1959, Sepulvado v. Argonaut Underwriters Insurance Company, La.App., 111 So.2d 178;
April, 1959, Hatten v. Olin Mathieson Chem. Corp., La.App., 112 So.2d 135;
April, 1959, Brown v. Crown Zellerbach Corp., La.App., 112 So.2d 150;
May, 1959, Varnell v. Roy O. Martin Lumber Co., La.App., 113 So.2d 83;
Jan., 1960, Farley v. Ryan Stevedoring Co., 238 La. 1048, 117 So.2d 587;
March, 1960, Darby v. Johnson, La. App., 118 So.2d 707;
March, 1960, Pope v. Coney, La.App., 119 So.2d 136;
March, 1960, Walters v. General Accident & Fire Assur. Corp., Ltd., La.App., 119 So.2d 550;
May, 1960, Miller v. Indemnity Ins. Co. of North America, La.App., 121 So.2d 581;
June, 1960, Murphy v. American General Insurance Company, La.App., 122 So.2d 100;
June, 1960, Moore v. Pullig, La.App., 123 So.2d 826, on rehearing;
Nov., 1960, Grahan v. Blewer, La.App., 124 So.2d 579;
Dec., 1960, Fontenot v. Travelers Ins. Co., La.App., 125 So.2d 664;
Jan. 9, 1961, Hoffman v. City of New Orleans, La.App., 125 So.2d 774;
Dec., 1960, Chapman v. Matthews, La. App., 126 So.2d 409;
Jan., 1961, Stewart v. Johnston, La. App., 127 So.2d 12;
Jan., 1961, Rashall v. Fallin & Savage Timber Co., La.App., 127 So.2d 238;
May, 1961, Phillips v. Underwriters at Lloyd's of LondonCites Pope and Carrington cases, La.App., 128 So. 2d 318, 322.
It is to be noted that as early as December, 1957, Judge Hardy, in Miller v. United States Fidelity & Guaranty Co., La.App., 99 So.2d 511 at 521 stated:
"* * * In the Carrington case, 230 La. 939, 89 So.2d 399, 404, the per curiam opinion of the Supreme Court on rehearing spelled out the approved formula in words of such clarity and *716 certainty as to prevent any possible future misinterpretation:
"`After determining an employee's daily wage, the six day week is to be employed in calculating his weekly wage. If he is injured, he is deprived of this ability to work six days per week, and remuneration is rewarded him for this deprivation. This test must be applied regardless of the number of days he works for the particular employer, by whom he is employed at the time of his injury.' (Emphasis supplied.)"
In a number of above decisions the Courts repeatedly alluded to the fact that the Supreme Court in the Carrington case, supra, had reviewed prior decisions on the subject and put to rest, once and for all, the correct interpretation of LSA-R.S. 23:1021(11) in saying that after determining an employee's daily wage, the six day week is to be employed, as the formula, in calculating his weekly wage.
This overwhelming line of decisions should make it crystal clear to anyone that the 6 day week wage computation in compensation cases should be applied. Still we are met in this case with an argument to the contrary. I agree with the majority that defendant's action in its refusal to pay the rate of compensation in accordance with the jurisprudence (Carrington 6 day week formula) was most arbitrary, capricious and unreasonable.
While it is true that the Court in the Darby case (Darby v. Johnson, La.App., 118 So.2d 707) allowed the small sum of $75 as attorney's fee as penalty, there are five other cases on the same point handed down subsequent thereto by the First and Second Circuits, awarding attorney's fees as penalties in the sum of $500; $2,000; $1700; $350, and $1000, as follows:
Walters v. General Accident & Fire Assur. Corp., Ltd., La.App., 119 So.2d 550March 1960$500.00 fee;
Moore v. Pullig, La.App., 123 So.2d 826June, 1960$500.00 fee; on rehearing $2,000.00 fee;
Fontenot v. Travelers Ins. Co., La.App., 125 So.2d 664Dec. 1960affirmed $1,700.00 fee;
Phillips v. Underwriters, La.App., 128 So.2d 318May, 19615 weeks @ $151.00, $350.00 fee;
Guillory v. Coal Operators, La.App., 95 So.2d 201May, 1957, $1,000.00 fee.
In the following cases, the attorneys for plaintiffs in compensation suits were granted the awards listed:

Guillory v. Coal Operators,
 La.App., 95 So.2d 201 ----------- $1000.00;
Fontenot v. Travelers Ins. Co.,
 La.App., 125 So.2d 664 ---------- 1700.00;
Cain v. Employers Casualty Co.,
 236 La. 1085, 110 So.2d 108 ----- 2000.00;
Hale v. Republic Drilling Co.,
 La.App., 109 So.2d 268 ---------- 750.00;
Humphreys v. Marquette
 Casualty Co., 235 La. 355,
 103 So.2d 895 ------------------- 1000.00;

even though the award was only $9.75 per week.
This is a clear showing of the inadequacy of the award of $150 in the instant case. In this case there were several depositions, trial in District Court and an argument in this Court. It is, to say the least, unrealistic to assume that $150 is adequate compensation to counsel when, as a matter of fact, this fee barely covers his travel and office expenses connected with the case. It is my considered opinion that the penalty in this case should be at least $1,000 in attorney's fee.
For these reasons, I respectfully dissent.

On Application for Rehearing.
En Banc. Rehearing denied.
FRUGÉ, J., dissents to refusal to grant rehearing.